In the Matter of the Application of CITY BANK FARMERS TRUST COMPANY, as Trustee of a Trust for the Benefit of ANNA F. ERNST, under an Agreement with WOOD FOSDICK, Dated May 4, 1918, Petitioner, for an Order of Certiorari against MARK GRAVES and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, March 6, 1940.

*Mitchell, Taylor, Capron & Marsh* [*Carter T. Louthan* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General*, of counsel], for the respondents.

FOSTER, J.  This is a proceeding by way of certiorari to review the final determination of the State Tax Commission which affirmed an assessment of income tax for the calendar year 1930.

Under a trust agreement, dated May 4, 1918, one Wood Fosdick transferred 300 shares of capital stock of the General Electric Company to petitioner as trustee, to apply the net income therefrom to the use of Anna Fosdick Ernst during her life, and upon her death to the use of Katherine Davies Ernst, and upon the death of the survivor of them to pay over the principal of the fund

to the donor, or in the event of his death to his estate. The trust agreement further provided that all stock dividends received on the stock held in trust should be delivered to the donor, or in the event of his death to his estate. The beneficiaries of the trust were alive, and non-residents of the State of New York, during the period embraced within the controversy.

The donor died testate on April 6, 1926. His will was admitted to probate on May 17, 1926, and petitioner duly qualified as executor thereof. It does not appear when his will was drawn, but in any event it made no specific reference to his interest by way of remainder in the trust fund. By the residuary clause, however, the residue of his estate was bequeathed to The American Museum of Natural History, conceded to be a corporation organized exclusively for scientific and educational purposes. On or before March 29, 1928, petitioner, as executor, satisfied all legacies bequeathed by the terms of the will, except the residuary legacy, paid all known claims against the estate, and held a bond of $5,000 in face value as a reserve for possible expenses. Therefore, the corpus of the trust fund will eventually become a part of the residuary estate and pass to The American Museum of Natural History. This eventuality leads petitioner to claim exemption from taxation for a part of the income, allocated as hereafter mentioned to the corpus of the trust fund, on the theory that such income is being held for an educational or scientific institution within the meaning of the statute. (Tax Law, § 365, subd. 2.) It is necessary, however, to state other facts in order to disclose the entire controversy.

In 1925 petitioner received 300 shares of Electric Bond & Share Securities Corporation as an extraordinary dividend upon General Electric stock. In 1929 petitioner received 897 shares of stock of the Electric Bond & Share Company in exchange for 299 shares of Electric Bond & Share Securities Corporation. One share of the latter stock is apparently unaccounted for.

During the taxable year 1930 petitioner sold 359 shares of Electric Bond & Share stock for $26,374.27. On the fiduciary income tax return for that year, filed April 13, 1931, petitioner reported a taxable gross income of $24,563.47, that being the difference between the sale price of the securities mentioned and $1,810.80, reported as the cost price thereof for the purpose of computing the gain. Petitioner claimed a deduction and exemption from taxation on the whole gain of $24,563.47 on the ground that within the meaning of the statute, as heretofore cited, all of such profit realized was held for an exempt corporation.

The State Tax Commission audited the return, and disallowed the entire deduction as claimed. On October 19, 1931, a tax of

$341.27 was imposed on this amount of income. This tax was paid. On March 22, 1932, petitioner filed an application for a revision of this assessment upon the basis that a portion of the income from the sale of the securities belonged to the beneficiary of the trust, and that the remainder was held for a scientific or educational institution, and generally upon any ground upon which petitioner might be advised.

Previous to this application, and in 1930, petitioner had instituted an action for the construction of the trust agreement, and to have determined whether the shares received constituted a stock dividend within the meaning of the agreement. That action was not finally determined until January, 1934, when it was held by the Court of Appeals that such shares did not constitute a stock dividend within the meaning of the agreement. (*City Bank Farmers Trust Co.* v. *Ernst*, 263 N. Y. 342.) An account was also filed in such action and it was determined that such dividend should be allocated by stipulation between the principal and income of the trust. The stipulation of facts submitted herein indicates that the allocation was made upon the following basis: Thirty-four per cent to the principal of the trust and sixty-six per cent to the income account thereof.

Matters remained in this shape when a formal hearing was held before the Tax Commission in February, 1935, upon the application for revision made in March, 1932. I do not find in the record any reason assigned for the delay in the hearing, but assume that it was not held until after the decision of the Court of Appeals clarified the status of the stock dividends. In any event it does not appear that this delay should be chargeable to petitioner alone. On such hearing it was claimed for the first time by petitioner that an error had been made in stating the cost price of the shares sold in 1930. It is conceded now that the cost price should have been stated as $5,932.40 instead of $1,810.80, but the Commission declined to give any consideration to this error on the ground that it was claimed too late. The Commission also refused to allow any deduction for income allocated to the principal of the trust, that is, thirty-four per cent, as being payable to a scientific or educational institution, for the reason that is was not paid or held pursuant to the terms of the instrument creating the trust. It also refused to allow any deduction of income claimed to have been payable to the beneficiary of the trust, that is, sixty-six per cent, on the ground that no claim for such deduction was made on the tax income return as filed by the petitioner, and for a failure to furnish information required by the statute. These are the matters presented for our consideration by this proceeding.

On the issue of a deduction claimed of principal for payment to a scientific or educational institution the statute (Tax Law, § 365, subd. 2) provides: " * * * The net income of an estate or trust shall be computed in the same manner and on the same basis as provided in this article for individual taxpayers, except that there shall also be allowed as a deduction any part of the gross income *which pursuant to the terms of the will or deed creating the trust*, is paid to or held for the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, *or any corporation or association organized and operated exclusively for religious, charitable, scientific or educational purposes,* * * *."

This language is plain and without ambiguity. Compliance with it requires some direction in the deed of trust that the gross income, or some part thereof, be paid or held for a scientific or educational institution. There is no presumption in favor of an exemption. (*People ex rel. Metropolitan St. R. Co.* v. *Tax Comrs.*, 174 N. Y. 417.) A deduction must come within the terms of the statute. (*New Colonial Co.* v. *Helvering*, 292 U. S. 435.) It may not be necessary to name the institution in the deed of trust, and discretion may be vested in the trustee as to payment, but it must appear at least that payment is made or held as a result of a direction contained in the trust, otherwise it is not so paid or held pursuant to the terms of the trust. That it may happen to follow as a result of a direction contained in some other instrument is not sufficient. It should be observed here that payment of the trust fund will eventually go to the residuary legatee named in the will of the donor not because of any direction contained in the trust agreement, but because the other portion of the donor's estate was sufficient to satisfy the other legacies directed in the will. In so far as the trust is concerned the remainder might go to satisfy some other legacy.

The decision in the case of *Old Colony Trust Co.* v. *Commissioner* (301 U. S. 379), construing a Federal statute analogous to the statute invoked here, does not hold to the contrary. There the trustees were authorized in their discretion to make payments to charities not specifically identified by name. The Circuit Court of Appeals took the view that since the trustees exercised discretion the payments were not made pursuant to the deed creating the trust. (87 F. [2d] 131.) The Supreme Court of the United States reversed this decision and held that the payments were made pursuant to the deed when *authorized* by it, although not *imperatively* directed. That decision is not pertinent to the proceeding here, and in no way justifies the complete lack of direction of the terms of the trust. I fail to find any error in the decision of the Commission on this phase of the matter.

As to the refusal of the Commission to allow deduction for income payable to the beneficiary of the trust a different situation is presented. Petitioner would ordinarily be exempt from payment of a tax on such income, as indicated by paragraph d of subdivision 1 and subdivision 4 of section 365 of the Tax Law (as it existed in 1930), for the reason that it had no discretion under the terms of the trust as to the distribution of income, and was required to distribute the same periodically to the beneficiary. Under such circumstances the fiduciary must make a return for information purposes but it was not required to pay a tax. (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173.) The Commission defends its refusal to adjust the tax collected for such part of the income on the basis that no amended return for the year 1930 was filed, and on the only return filed petitioner made no claim for a deduction of income paid to the beneficiary, but instead claimed an exemption for the entire amount on the ground that it was being held for an exempt corporation. The assessment of the tax in the sum of $341.27 was predicated upon the disallowance of this entire claim.

It is also charged that petitioner's application for revision, so far as this claim is concerned, was too vague and indefinite. It did, however, contain the statement: " That a portion of said profits belonged to the life tenant and should not have been reported as taxable income by your petitioner." It is further asserted that a compliance with the statute required a statement of the amount distributable to the life tenant, together with the name and address of such beneficiary. The precise section of the statute to support this assertion is not quoted but I assume it refers to section 369 — relating to fiduciary returns. This information was not presented until the hearing in 1935, and after the period had expired when a tax might have been asserted against the beneficiary had she been a resident of New York. This procedure on the part of petitioner, so counsel for the Commission argues, is at variance with the need for finality in the determination of revenues of the State, and that the action of the Commission should be upheld for such reason, and also for petitioner's alleged failure to comply in all respects with the statute.

While these arguments may not be lightly disregarded, nevertheless the position of petitioner should not be overlooked. The status for the income of 1930 was uncertain until January, 1934, when the Court of Appeals decided the stock dividend issue. That such issue was decidedly uncertain is clear from the disagreement between appellate courts. There was also an arguable issue as to whether such income was held for an exempt corporation. In view of such uncertainty petitioner's failure to comply with the

strict letter of statute or regulation was entirely excusable. Moreover, the State has been in no way prejudiced since the life beneficiary was at all times a non-resident, and, therefore, not taxable upon her distributive share. (Tax Law, § 365, subd. 4; Personal Income Tax Regulations, art. 495.) In addition, we think that petitioner's application for revision brought the issue properly before the Commission. It was filed within the time required and sufficiently apprised the Commission of the nature of the claim. Section 374 of the Tax Law, which deals with applications for the revision and readjustment of tax accounts, did not, and does not now, require the taxpayer to draft his application in precise and exact allegations. It is the evidence submitted at the hearing that is important. Thus the statute read in part: " * * * The Tax Commission shall grant a hearing thereon and if it shall be made to appear, upon any such hearing by evidence submitted to it or otherwise, that any such computation includes taxes or other charges which could not have been lawfully demanded, or that payment has been illegally made or exacted of any such amount so computed, the Tax Commission shall resettle the same according to law and the facts, and adjust the computation of taxes accordingly. * * *."

The evidence given before the Commission at the hearing in 1935 clearly indicated that under the statute petitioner was not liable for the tax imposed upon that portion of the income allocated to the beneficiary, and the Commission should thereupon have made the necessary adjustment.

The same reasoning applies in part to petitioner's claim for the correction of the error made on the original return, wherein it was stated that the cost price of the stock sold was $1,810.80, when the correct figure was $5,932.40. No mention of this was made in the application for revision, and the error was first disclosed at the hearing in 1935. The Commission holds that the discovery of this error was so belated that it is precluded under the statute from giving it any consideration. A distinction is sought to be made between applications for revision filed within two years after the return has been filed, and those filed within one year after a tax has been assessed by the Commission. The distinction is immaterial here. Petitioner's application came within both time limits. The real question is whether correction may be barred because of failure to disclose the error in the application. As heretofore indicated, the statute (§ 374) does not require such particularity. It is the evidence that should control. The application is merely the method prescribed to secure the hearing.

Article 574 of the Regulations, also cited and which requires all the facts relied upon in support of a claim to be set forth under oath,

refers only to informal claims for refunds where a formal hearing is not to be had, as distinguished from the statutory application for revision. The reason for such a requirement in those claims where a hearing is not to be held is obvious. Unless the proof is set forth and verified there is no basis for action. In this case, however, the petitioner came within the statutory provision, and presented proof of the error that has been since conceded in the stipulation of facts. The Commission should have allowed the correction.

The determination of the State Tax Commission should be modified by reducing the tax assessed to $44.50, and granting a refund to petitioner in the sum of $296.77, and as modified confirmed, without costs.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; SCHENCK, J., taking no part.

Determination of the State Tax Commission modified by reducing the tax assessed to $44.50, and granting a refund to petitioner in the sum of $296.77, and as so modified confirmed, without costs.