HYLAND P. GEORGE and RICHARD M. APPLEBY, trading as
George & Lynch, plaintiffs, v. UNEMPLOYMENT COM-
PENSATION COMMISSION OF DELAWARE, defendant.

(*January* 30, 1945.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*William S. Potter* and *Collins J. Seitz* (of Southerland,
Berl and Potter) for the plaintiffs.

*Caleb R. Layton, 3d,* for the defendant.

Superior Court for New Castle County, 149, May Term, 1944.

LAYTON, Chief Justice.

This case is before the Court under the provisions of Sec. 6(i) of the Unemployment Compensation Law.[1] The facts are not in dispute.

The sole question is whether the plaintiffs, as employers, in making contributions to the Unemployment Compensation fund, were entitled after January 1, 1942 to a percentage rate lower than the standard rate of 2.7 per annum with respect to employment, under Sec. 7(c) (1) (A) of the law.

The Act became effective on April 30, 1937. In a prefatory declaration of state public policy it was declared that social security "can be accomplished by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance."

By Sec. 2(g) " 'Employing unit' means any individual or type of organization, including any partnership, association, trust estate, joint stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsquent to January 1, 1936, had in its employ one or more individuals performing services for it within this State." 43 *Del. Laws,* c. 281, § 2.

---

[1] *Ch.* 258, *Vol.* 41, *Del. Laws,* as amended by *Chs.* 196, 197, 198, *Vol.* 42, *Del. Laws, Chs.* 278, 279. 280, 281, 282, 283, *Vol.* 43, *Del. Laws, Chs.* 207, 208, *Vol.* 44, *Del. Laws.*

By Sec. 2(h) (1) "employer" means "Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year (whether or not such weeks are or were consecutive) has or had in employment, one or more individuals (irrespective of whether the same individuals are or were employed in each such week)."

By Sec. 8(b) an "employing unit" shall cease to be an "employer" subject to the Act "only as of the 1st day of January of any calendar year, only if it files with the commission, prior to the 5th day of January of such year, a written application for termination of coverage, and the commission finds that there were no twenty (20) different days, each day being in a different week within the preceding calendar year, within which such employing unit employed one (1) or more individuals in employment subject to this Act."

By Sec. 2(d) "Contributions" means the money payments to the State Unemployment Compensation fund required by the Act; and the provisions which are of immediate concern are found under the general heading of "contributions," as follows:

Sec. 7(a) (1) "On and after January 1, 1937, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this act, with respect to wages for employment. Such contributions shall become due and be paid by each employer to the commission for the fund in accordance with such regulations as the commission may prescribe, and shall not be deducted, in whole or in part, from the wages of individuals in such employer's employ."

"(b) (1)   Each employer shall pay contributions equal to the following percentages of wages payable by him with respect to employment."

"(A)  1.8 per centum with respect to employment occurring during the calendar year 1937."

"(B)  2.7 per centum with respect to employment occurring during the calendar years 1938, 1939, and 1940."

"(2)  Each employer shall pay contributions equal to 2.7 per centum of wages paid by him during the calendar year 1941, and during each calendar year thereafter, with respect to employment occurring after December 31, 1940, except as may be otherwise prescribed in subsection (c) of this section."

"Future Rates Based on Benefit Experience."

"(c) (1) (A)  The Standard rate of contributions payable by each employer shall be 2.7 per centum.

"(B)  No employer's rate shall be reduced below the standard rate for any calendar year unless and until his account could have been chargeable with benefit wages throughout the thirty-six consecutive calendar months ending on December 31 of the preceding calendar year."

When the Act went into effect Hyland P. George and John P. Lynch, trading under the firm name of George & Lynch, were engaged in a general contracting business, became subject to its provisions, and began making contributions to the compensation fund at the standard rate of 2.7 per centum of the wages paid to its employees. On February 22, 1940, John P. Lynch died. The surviving partner purchased from his deceased partner's executor all of the interest of the decedent in the firm's assets, and continued in the same business, under the same trade name, using the same equipment, office, executives and substantially the same labor personnel. In the office of the Commission one folder, or jacket, contains all of the "George & Lynch" reports. In

the folder was a letter dated April 15, 1940, by which the Commission was advised of the death of Mr. Lynch, and that the surviving partner, Hyland P. George, was continuing the business temporarily as an individual under the trade name of George & Lynch. No application in writing for termination of coverage under Sec. 8(b) was made.

Subsequent to the death, the Commission, on March 31, 1940, that being the end of the calendar quarter year, caused a blue line to be drawn under the "George & Lynch" record to indicate that, owing to the dissolution of the firm by the death, the account was terminated for experience rating purposes, in result that the account of the survivor although continuing to operate the business under the same trade name would not become entitled to apply for, a reduction of the rate of 2.7 per centum except upon a showing of wages paid in respect of employment for thirty-six consecutive months subsequent to the death, that is, not until January 1, 1944, rather than on January 1, 1942.

The Commission, after formal hearing, ruled that the plaintiffs were not entitled to a lower rate for contributions paid during the years 1942 and 1943, on the ground that the firm of George & Lynch ceased to exist as a legal entity on the death of Mr. Lynch, and it was no longer possible for the firm's account to be chargeable with benefit wages; wherefore, the account could not have been chargeable with benefit wages throughout the thirty-six consecutive calendar months ending on December 31 of the preceding year, under the provisions of Sec. 7(c) (1) (B) of the Act.

The plaintiffs contend that the Commission's interpretation of the language of the paragraph is discriminatory, and highly penal as against partnerships and in favor of corporations, and leads to the unjust result that the account of George & Lynch, chargeable as it was for upwards of two years at 2.7 per centum of the wages paid by the firm, is denied a lower rate because of the involuntary change in

the type of organization occasioned by the death of the partner although the business was continued in precisely the same way. It is insisted that, having regard for the language of the declaration of state policy, and the statutory definitions of "employing unit" and "employer," the Legislature manifested no particular interest in the type of legal entity assumed by an employing unit, and that the statute is not concerned with legal niceties with respect to the type or form of organization assumed by an employer so long as there is a substantial continuity of interest and identification in the employer; and attention is called to the fact that no application in writing for termination of coverage was made under Sec. 8(b), so that "George & Lynch" continued to be an employer under the law.

The argument is found unacceptable for the reason that, upon the death of the partner, the firm of George & Lynch ceased to exist, and there remained no real continuity of interest and identification with respect to the individual carrying on the business.

Apart from the conception of a partnership as a legal entity distinct from and independent of the persons composing it, a partnership is a relation or status resulting from an agreement between persons whereby they unite their money, effects, credit, labor, skill and experience, or some or all of them, in the prosecution of a lawful business. The success of a business partnership is, in general, dependent upon the attributes of the partners; and its ability to maintain employment of labor is largely dependent upon its success in business. What contribution the deceased partner made to the success of the firm of George & Lynch by way of skill and experience and credit and reputation in the business and financial world does not appear, but we do not know and cannot assume that he was not a material factor in the successful prosecution of the enterprise and in the maintenance of employment by the firm. These considera-

tions serve to show that upon the death of the partner, notwithstanding the continued use of the trade name, which amounts to nothing, and the employment of the same office, executives, equipment and personnel, the successor was another and different employer with a distinct individuality and distinguishable characteristics, whose ability to maintain employment was for the future to determine. There was a complete change of identity and interest. All that remained of uninterrupted sequence was continuity of business, not of ownership or liability. *New Colonial Ice Co. v. Helvering*, 292 *U. S.* 435, 54 *S. Ct.* 788, 78 *L. Ed.* 1348. If, for example, the firm of George & Lynch had sold the entire business to a stranger who, without break in operation, continued to carry on the enterprise with the same equipment and personnel, it would hardly be arguable that the benefit experience built up by the partnership was in the nature of an asset transferable to a successor whose ability to maintain a satisfactory employment record was undemonstrated. Again, let it be supposed that the firm had a poor experience record of employment with a rate of three per centum or more, which is possible under the law, and upon the death of the partner, the survivor continued to operate as before, it would be a harsh ruling to fasten the penalty on the successor.

There is no discrimination in a legal sense against partnerships and in favor of corporations. A partnership as a form of business association, has its advantages and disadvantages. If persons choose to associate themselves as partners it does not follow that a law is discriminatory because of disadvantages inherent in the form of association.

The language of the paragraph is plain and its meaning is clear. The words "his account" refer necessarily to a definite employer and his experience in maintaining employment. The general language of the preamble to the Act

and the statutory definitions of "employing unit" and "employer" cast no doubt upon the legislative intent. The provisions of Section 8(b) with relation to termination of coverage are entirely unrelated to the question. The word "successor," as used in Sec. 2(g) of the Act, imports a devolution of property by statutory succession. *Claim of Turano,* 260 *App. Div.* 971, 23 *N. Y. S.* 2d 213, affirmed *Turano v. Wightman,* 286 *N. Y.* 574, 35 *N. E.* 2d 925.

It may be supposed that the establishment of the standard rate of 2.7 per centum of wages paid with respect to employment and the precise limitation placed on future rates based on benefit experience were the results of careful study to the end that the unemployment compensation fund would be adequate in all reasonably foreseeable circumstances, and that any alteration of the law which may operate to decrease the rate and, in consequence, the fund will have like careful consideration. The hard and unescapable fact is that the Legislature has made no provision for a transfer of benefit experience with respect to employment from a predecessor to a successor employer except as suggested by Sec. 7(c) (5) which has relation to mergers, consolidations or other forms of reorganization. *Sec. 11, Ch.* 207, *Vol.* 44, *Del. Laws,* approved March 12, 1943. With this provision we are not here concerned. Hardship in some degree may be admitted, but the Act is a taxing act, and under such statutes cases of individual hardship abound. What the plaintiffs ask is that they be relieved from the application of the 2.7 per centum rate and allowed to come within a lower rate. The analogy of exemption from taxation is suggested. The burden is always on the claimant to establish his right to an exemption by bringing himself clearly within the terms of the grant. As said in *New Colonial Ice Co. v. Helvering, supra* [292 *U. S.* 435, 54 *S. Ct.* 790], "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be

allowed." There is no ambiguity in the language of the Act, and no reason to indulge in construction. The Court may not speak when the Legislature has declared its will. Benefit experience in respect of employment acquired by a partnership is not transferable to a successor to the enterprise.

The authorities are few. The plaintiffs cite as their only authority a ruling by the Unemployment Compensation Commission of New Jersey in 1942; and it is stated in their brief that the Commission in that State ruled in 1943 that the present firm of George & Lynch was entitled under the New Jersey law to the experience rating of its predecessor.

To the contrary, and in accord with the ruling of the Commission in this State, is a ruling of the Idaho Commission through the Attorney General of the State. Com. Clearing House, U C I S Idaho, 1800.05. The Court of Appeals in Georgia and the Supreme Court in Florida, in decisions more sweeping than is necessary here, have likewise interpreted substantially similar provisions. In *Schwob Manufacturing Co. v. Huiet*, 69 *Ga. App.* 285, 25 *S. E.* 2d 149, and in *Florida Industrial Commission v. Schwob Co.*, 153 *Fla.* 356, 14 *So.* 2d 666, 667, a corporation acquired from an individual his entire business organization, trade and assets, the individual through stock control, eighty-five per centum in one case and practically one hundred per centum in the other, continuing to exercise domination and control over the business. In each case it was held that the corporation could not claim the benefit experience with respect to employment of the individual.

We are of opinion that the Unemployment Compensation Commission correctly construed the law in denying the plaintiff's demand.

An order will be signed in accordance with this opinion.