HOLMES, Judge
(dissenting):
I respectfully dissent. The trial court found the taxpayer was not subject to the tax rate the State sought to impose upon him. I agree that the taxpayer is not subject to the tax rate the State seeks to impose upon him under § 25-4—54(i).
The majority opinion reaches an unfortunate result in that it unreasonably burdens the taxpayer with a tax rate which is not warranted by the facts, and it is contrary to the policies which underpin the unemployment system of this state.
Without reiterating the circumstances of this case, there is a fact of vital importance worthy of mention. Gibson’s Barbecue, Inc., as taxpayer, has maintained an excellent benefit wage record (experience rating) over an extended period of time in the past. This is clearly indicated by the record and, in fact, the State does not contend to the contrary. Given this fact, we do not have a situation before us in which a successor *1233 employer seeks to circumvent the spirit of §§ 25-4-54(i), and 25-4-8(a)4(a), Code of Ala.1975, by attempting to acquire the favorable tax treatment of a former employer, even though the successor would not himself be entitled to such favorable treatment. See, e. g., Annot., 22 A.L.R.2d 673 (1950). Nor do we have a situation in which a taxpayer is attempting to avoid payment of delinquent taxes; in fact, the taxpayer instituted this action in an effort to determine his reasonable tax rate prior to any assessment. The action became necessary because the State seeks, in large part, to impose the experience rating of the taxpayer’s predecessor upon the taxpayer, notwithstanding the fact that they had granted the taxpayer a favorable rate in years past.
To facilitate the discussion of my objections to the majority’s holding, a brief digression to the objectives of Alabama unemployment compensation system is appropriate.
The objectives of the unemployment tax are two: To prevent unemployment by inducing employers to stabilize their operations and to fund the payment of benefits for the unemployment that remains. Brandeis, The Employer Reserve Type of Unemployment Compensation Law, 3 Law & Contemp. Prob. 54, 56 (1936). The experience rating is the means employed by the State to accomplish these two ends. That is, the taxpayer has an incentive to reduce the incidence of his tax by reducing unemployment in his business while, at the same time, the rate of tax assessed against him is calculated to fund the system based upon a computation of the risk that his employees will become jobless. The tax must, of necessity, be differential in order to be an incentive and, accordingly, it is increased or decreased based on an analysis of the history of the employer’s employment stability.
Since the tax rate is differential, an employer is entitled to factually demonstrate he is entitled to a reduced rate of contribution based on an analysis of his “experience” with respect to unemployment or other factors bearing a direct relation to the unemployment risk. A. Arnold, Experience Rating, 55 Yale L.J. 218, 231 (1945). In order for the system to operate fairly to both employer and employee and achieve its objectives:
“[T]he measure that is used . . . [to calculate the experience rating] ought necessarily to reflect each employer’s performance in terms of the cost of unemployment which he places upon the fund, or of his performance in stabilizing his employment. . . .” [Emphasis supplied.]
Clearly, what is required is a balancing of interests. If the rate assessed is insufficient to cover the risk, then the system is inadequately funded; on the other hand, if the rate is greater than that necessary to meet the risk, the tax is no longer an incentive and becomes an unreasonable burden on the businessman.
In this instance, the State’s assessment serves as a penalty on the taxpayer. This is to be avoided as the court in Pariseau Corp. v. State, 102 N.H. 364, 156 A.2d 753 (1959), aptly noted:
“[I]t is considered advisable to reward an employer with good employment records by giving him a favorable rating and thereby reducing his payment . . . .” Id. 156 A.2d at 756.
Given the fact that the system seeks to balance the interest of both employer and employee, the State is precluded from assessing a rate which does not serve the ends of the system. Here, the State has chosen a rate which punishes rather than rewards and for this reason alone the tax rate assessed is unreasonable.
More importantly, the State’s calculation of the experience rating here bears no reasonable relationship to unemployment or other factors bearing a direct relationship to the risk of unemployment. That the tax rate must directly relate to the risk is demonstrated by the language in § 1602 of the Internal Revenue Code of 1939, which provides in part:
“[N]o reduced rate of contributions . is permitted to a person' . . . having individuals in his . employ *1234 except on the basis of his . . . experience with respect to unemployment or other factors bearing a direct relation to unemployment risk . . . .” 26 U.S.C.A. § 3303(a)(1) 1970. [Emphasis supplied.]
The mere fact that there has been a transfer of a business to a successor does not make the requirement that there be a factual basis to support the experience rating any less compelling. When the experience of the successor is likely to be that of his successor, his contribution should be that of his predecessor. See, e. g., Note, 60 Harvard L.Rev. 276, 277 (1946). Conversely, when the successor’s experience rating is likely to be much better than his predecessor, there is no factual basis to assign the predecessor’s rating to the successor. George v. Unemployment Comm’n, 3 Terry 558, 41 A.2d 465 (Del.Super.Ct.1945). As the court in George, supra, noted:
“Again, let it be supposed that the firm had a poor experience record of employment with a rate of three per centum or more, . . . and upon [transfer], the survivor continued to operate as before, it would be a harsh ruling to fasten the penalty on the successor.” Id. 41 A.2d at 468.
Here, the State has ignored the experience rating it previously assigned to the taxpayer and the facts upon which it calculated that rate. I believe the State now seeks to arbitrarily assign a rating based on another’s poor performance and this is both logically and factually impermissible.
The scope of the effect of the majority’s decision goes much further than its effect upon the instant taxpayer. As noted above, the first of the two goals of the system is to stimulate the reduction of unemployment by offering a tax rate decrease when the businessman demonstrates his intention and ability to sustain employment in his firm. The majority’s decision places this objective in jeopardy since it discourages the public policy in Alabama of encouraging job expansion. As stated in E. Schmidt, Experience Rating and Unemployment Compensation, 55 Yale L.J. 242 (1945):
“A tax upon the employer measured by payrolls is one of the worst types of taxes in terms of encouraging job expansion. The higher the wages, the higher the tax; The greater the number of workers, the greater the tax; every wage increase means a higher payroll tax; every worker added to the payroll means an extra tax. It is under experience rating coupled with effective employment stabilization that the employer’s incentive to avoid the payroll tax is reduced, because the employer may qualify for a reduced . . . rate ...” Id. at 246-47.
Another advantage accrues when the system of ratings operates as it should. Where payroll taxes are minimized as a consequence of the employer’s concerted effort to keep his employees on the job, the tax savings which result serve to facilitate business expansion. This expansion can be expected to contribute to a reduction in short term unemployment and cyclical unemployment as well. Id. at 250. Where, as here, the State assigns the taxpayer the poor rating of his predecessor, the economic advantages which the system seeks to foster are jeopardized.
For the foregoing reasons, I would hold that, in this case, as the trial court did, that the taxpayer is not within the application of § 25-4-54(i), Code of Ala.1975, and therefore, he should be assessed the favorable experience rating to which he has demonstrated he is entitled. The purpose of the statute would be fulfilled by so holding and, therefore, I would affirm the trial court’s action.