## NEW COLONIAL ICE CO., INC. *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 547. Argued March 5, 6, 1934.—Decided May 28, 1934.

*Mr. Joseph Sterling,* with whom *Mr. Edward G. Griffin* was on the brief, for petitioner.

*Mr. H. Brian Holland,* with whom *Solicitor General Biggs* and *Messrs. Sewall Key* and *John MacC. Hudson* were on the brief, for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a controversy respecting deficiencies in the petitioner's income taxes for 1922 and 1923.

The question presented is—where all the assets and business of an older corporation are taken over by a new corporation, specially organized for the purpose and having substantially the same capital structure, in exchange for a portion of its stock, which is distributed by the older corporation among the latter's stockholders share for share, thereby retiring the old shares, is the new corporation entitled, notwithstanding the change in corporate identity and ownership, to have its taxable income for the succeeding period computed and determined by deducting from its net income for that period the net losses sustained by the older corporation in the preceding period? The answer involves a construction of § 204 (b) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 231, which declares:

" If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary."

The material facts out of which the controversy arises are as follows:

Both corporations were organized under the laws of New York for the purpose of producing and selling ice— the older in 1920, with an authorized capital of $750,000, and the new on April 13, 1922, with an authorized capital of $700,000. The older one had proceeded to issue and sell stock, acquire a site for its plant and supply necessary equipment. When the equipment was only partly in-

stalled, and the plant was being operated at forty per cent of its intended capacity, the company became financially embarrassed and unable to meet its indebtedness or supply additional equipment needed to render the business profitable.

A creditors' committee was organized, and likewise a stockholders' committee. Investigation disclosed that much stock had been issued of which there was no record and for which no consideration was received. Negotiations resulted in the restoration and cancellation of the spurious stock and in an agreement to organize a new company to take over the assets and liabilities, proceed with the completion of the equipment and continue the operation of the business. The agreement included provisions for the issue of stock by the new company to the old equal in class, par value and number of shares, to the outstanding stock so that the old company could make an exchange share for share with its stockholders and thereby retire its outstanding stock; for obtaining new funds with which to complete the equipment; for an extension of time by existing creditors; and for investing creditors with a supervising management through a stock-voting trust until their claims were paid.

Accordingly the new corporation—petitioner here—was organized and took over the assets, liabilities and business of the old corporation on April 13, 1922. Other provisions of the agreement were carried out in the manner contemplated, save in minor particulars not material here. The corporate existence of the old corporation continued (so it is stipulated) during the remainder of 1922 and all of 1923, but after the transfer it transacted no business and had no assets or income.

The old corporation sustained statutory net losses in the sum of $36,093.19 during 1921 and in the further sum of $10,338.90 during the part of 1922 preceding the transfer. The new corporation realized a net income of $48,-763.43 during the part of 1922 succeeding the transfer

and of $56,242.55 during the year 1923. In this proceeding the new corporation asserts a right under § 204 (b) to a deduction from its income so realized of the losses so sustained by the old corporation.

The petitioner insists that the continuity of the business was not broken by the transfer from the old company to the new; and this may be conceded. But it should be observed that this continuity was accomplished by deliberate elimination of the old company and substitution of the new one. Besides, the matter of importance here, as will be shown presently, is not continuity of business alone but of ownership and tax liability as well. Had the transfer from one company to the other been effected by an unconditional sale for cash there would have been continuity of business, but not of ownership or tax liability.

Petitioner also insists that the ultimate parties in interest—stockholders and creditors—were substantially the same after the transfer as before; and this may be conceded. But there is here no effort to tax either creditors or stockholders. Other statutes, as also constitutional provisions, have an important bearing on the taxation of gains by stockholders through corporate reorganizations, and the cited decisions relating to that subject [1] are not presently apposite. What is being taxed in this instance is the income realized by the new company in conducting the business after the transfer; and the sole matter for decision is whether, under § 204 (b), there shall be deducted from that income the losses suffered by the old company in its conduct of the same business before the transfer.

The Board of Tax Appeals, 24 B.T.A. 886, and the Circuit Court of Appeals, 66 F. (2d) 480, both ruled that the deduction is not admissible under the statute.

---

[1] *United States* v. *Phellis,* 257 U.S. 156; *Rockefeller* v. *United States,* 257 U.S. 176; *Cullinan* v. *Walker,* 262 U.S. 134; *Weiss* v. *Stearn,* 265 U.S. 242; *Marr* v. *United States,* 268 U.S. 536.

The power to tax income like that of the new corporation is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.

The statutes pertaining to the determination of taxable income have proceeded generally on the principle that there shall be a computation of gains and losses on the basis of a distinct accounting for each taxable year; and only in exceptional situations, clearly defined, has there been provision for an allowance for losses suffered in an earlier year. Not only so, but the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i.e., to treat them as personal to him and not transferable to or usable by another.

Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.

These views, often reflected in decisions of this Court, have been recently reaffirmed and applied in *Woolford Realty Co*. v. *Rose*, 286 U.S. 319, 326 *et seq.; Planters Cotton Oil Co*. v. *Hopkins*, 286 U.S. 332; and *Helvering* v. *Independent Life Ins. Co.*, *ante*, p. 371.

When § 204 (b) is read with the general policy of the statutes in mind, as it should be, we think it cannot be regarded as giving any support to the deduction here claimed. It brings into the statutes an exceptional provision declaring that where for one year " any taxpayer has sustained a net loss " the same shall be deducted from the net income of " the taxpayer " for the succeeding taxable year; and, if such loss be in excess of the income for that year, the excess shall be deducted from the net income for the next succeeding taxable year. Its words are plain and free from ambiguity. Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall

be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure.

We come then to an alternative contention that, even though the section be not as broad as claimed, the deduction should be allowed, because " for all practical purposes the new corporation was the same entity as the old one and therefore the same taxpayer." This is not in accord with the view on which the stockholders and creditors proceeded when the new company was brought into being. They deserted the old company and turned to the new one because they regarded it as a distinct corporate entity and therefore free from difficulties attending the old one. Having sought and reaped the advantages incident to the change, it well may be that they would encounter some embarrassment in now objecting to an incidental and remote disadvantage such as is here in question. But, be this as it may, we are of opinion that in law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law. Thereafter neither corporation had any control over the other;[2] the old corporation had no interest in the assets or business, and the chance of gain and the risk of loss were wholly with the new one. Thus the contention that the two corporations were practically the same entity and therefore the same taxpayer has no basis, unless, as the petitioner insists, the fact that the stock-

[2] See *Southern Pacific Co.* v. *Lowe*, 247 U.S. 330, 337; *Peabody* v. *Eisner*, 247 U.S. 347, 349; *Gulf Oil Corp.* v. *Lewellyn*, 248 U.S. 71.

holders of the two corporations were substantially the same constitutes such a basis.

As a general rule a corporation and its stockholders are deemed separate entities [3] and this is true in respect of tax problems.[4] Of course, the rule is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights.[5] But in this case we find no such exceptional situation—nothing taking it out of the general rule. On the contrary, we think it a typical case for the application of that rule.

The petitioner relies on *Pioneer Pole & Shaft Co.* v. *Commissioner*, 55 F. (2d) 861; *Industrial Cotton Mills* v. *Commissioner*, 61 F. (2d) 291; and *H. H. Miller Industries Co.* v. *Commissioner*, 61 F. (2d) 412. The decisions in these cases are not wholly in point but contain language giving color to the petitioner's claim, and are to that extent in conflict with other federal decisions, notably *Athol Mfg. Co.* v. *Commissioner*, 54 F. (2d) 230; *Turner-Farber-Love Co.* v. *Helvering*, 68 F. (2d) 416; and the decision now under review. In so far as they are not in harmony with the views expressed in this opinion they are disapproved.

*Judgment affirmed.*

---

[3] *Pullman Car Co.* v. *Missouri Pacific Ry. Co.*, 115 U.S. 587, 596–597; *Donnell* v. *Herring-Hall-Marvin Safe Co.*, 208 U.S. 267, 273; *United States* v. *Delaware, L. & W. R. Co.*, 238 U.S. 516, 527–529; *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U.S. 333; *Klein* v. *Board of Supervisors*, 282 U.S. 19, 24.

[4] *Klein* v. *Board of Supervisors*, 282 U.S. 19, 24; *Dalton* v. *Bowers*, 287 U.S. 404, 410; *Burnet* v. *Clark*, 287 U.S. 410, 415; *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415, 418–420.

[5] *United States* v. *Lehigh Valley R. Co.*, 220 U.S. 257, 272–274; *Chicago, M. & St. P. Ry. Co.* v. *Minneapolis Civic Assn.*, 247 U.S. 490, 500–501; *Southern Pacific Co.* v. *Lowe*, 247 U.S. 330, 337–338; *Gulf Oil Corp.* v. *Lewellyn*, 248 U.S. 71.