**KOPPERS COMPANY, Inc., Successor on Merger to Koppers United Company and Subsidiaries,**

v.

**The UNITED STATES.**

No. 161-52.

United States Court of Claims.

Oct. 4, 1955.

David W. Richmond, Washington, D. C., for plaintiff. Robert N. Miller, Frederick O. Graves, Miller & Chevalier, Washington, D. C., E. S. Ruffin, Jr., and C. M. Crick, Pittsburgh, Pa., were on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff sues to recover $1,486,-667.22, with interest thereon, which sum represents excess profits tax and interest for the calendar year 1943. Three issues were presented in the amended petition. One involved interest on "potential deficiencies" and one involved net operating loss carry-backs. Both of these issues have been abandoned by plaintiff because of the adverse decisions in United States v. Koppers, Co., Inc., 348 U.S. 254, 75 S.Ct. 268, and United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733. The remaining issue is whether an unused excess profits credit for the first taxable period of a surviving corporation in a statutory merger can be employed as an unused excess profits credit carry-back under section 710 (c) (3) (A) of the Excess Profits Tax Act of 1940, as amended,[1] to reduce the consolidated excess profits net income of the corporations which were merged.

The facts, which have been stipulated by the parties, may be summarized as follows: Koppers United Company was the parent company of Fuel Investment

---

1. 54 Stat. 975, 26 U.S.C. § 710 et seq., Supp. IV, 1940 ed.; repealed by Act of November 8, 1945, 59 Stat. 568.

Associates, Koppers Company and The Koppers Erecting Corporation. The first two companies were Massachusetts trusts and the latter two were Delaware corporations. Koppers United Company and its subsidiaries filed a consolidated excess profits tax return for 1943 disclosing an excess profits net income of $14,840,421.35, an excess profits credit of $4,070,456.97 and an excess profits tax liability of $8,719,621.15. Koppers United Company paid $6,539,715.86 of this liability.

On September 30, 1944, Koppers Company, Inc., the plaintiff herein, was organized. On November 10, 1944, Koppers United Company and its subsidiaries were merged under the laws of Delaware into the Koppers Company, Inc. The Commissioner ruled that the merger was a tax free reorganization under section 112 of the code, 26 U.S.C. A. § 112. The balance of the excess profits tax liability for 1943 was paid by the plaintiff, the surviving corporation. A deficiency of $366,079.15 for 1943, plus interest of $210,110.13 was assessed against plaintiff and its predecessors and was paid by plaintiff.

Returns were filed and the taxes shown thereon were paid for the taxable period January 1, 1944, to November 10, 1944. On February 6, 1951, plaintiff executed an Agreement to Amount of Constructive Average Base Period Net Income Determined Under Section 722, 26 U.S. C.A. § 722, for the taxable period ended November 10, 1944. The constructive average base period net income agreed to for this period, $3,525,481.13, resulted in an excess profits credit of $3,-260,875.07 for this period and an overpayment of excess profits tax in the amount of $153,733.52. This overpayment has apparently been refunded or credited to plaintiff. The amount of section 722 relief (increase in average base period net income) allowed for the taxable period ended November 10, 1944, was $597,171.13.

The plaintiff filed an excess profits tax return for the taxable period September 30, 1944, to December 31, 1944, disclosing an excess profits net income of $679,609.22, and an excess profits credit of $1,529,711.46. After adjustments made by defendant, plaintiff had no excess profits net income for this taxable period of 1944. The plaintiff claims an unused excess profits credit carry-back in the amount of $435,551.74. The defendant disputes plaintiff's right to carry back any amount but admits that plaintiff has an unused excess profits credit in the amount of $384,517.64. It has been stipulated that the taxable year in which the unused excess profits credit arose was the period September 30, 1944, to December 31, 1944, and that the period January 1, 1944, to November 10, 1944, is the first preceding taxable year. The calendar year 1943, which is before the court, is the second preceding taxable year for purposes of the carry-back issue here in question.

Section 710(c) (3) (A) provides:

"(3) Amount of unused excess profits credit carry-back and carry-over—(A) Unused excess profits credit carry-back.

"If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such unused excess profits credit over the adjusted excess profits net income for the second preceding taxable year computed for such taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit, and (ii) without the deduction of the specific exemption provided in subsection (b) (1)."

The plaintiff contends that it is the same taxpayer as its constituent companies for the purposes of section 710(c) (3) (A) since it absorbed them in a statutory merger and that it is the tax-

payer for purposes of section 710(c) (3) (A) because the tax to be reduced is its own direct and primary liability. The defendant contends that plaintiff is not the taxpayer within the meaning of section 710(c) (3) (A) and that Congress did not intend to allow the carry-back.

The literal language of the code allows the carry-back. Section 740 (a) provides: " * * * The term 'acquiring corporation' means—* * * (3) A corporation the result of a statutory merger of two or more corporations * * *." 26 U.S.C.A. § 740. Subsection (b) of section 740 provides: " * * * The term 'component corporation' means—* * * (3) In the case of a statutory merger, all corporations merged, except the corporation resulting from the merger * * *." The plaintiff was clearly an "acquiring corporation" and the companies it absorbed were "component corporations." Section 742 provides: "Supplement A average base period net income. In the case of a taxpayer which is an acquiring corporation, its average base period net income (for the purpose of the credit computed under section 713) shall be the amount computed under section 713 or the amount of its Supplement A average base period net income, whichever is the greater. * * *" 26 U.S.C.A. § 742. Basically, the average base period net income computed under this section is the consolidated excess profits net income with certain adjustments not here material. That plaintiff was entitled to compute its average base period net income under section 742 is clear and is conceded by the defendant.

The section 742 average base period net income is then used to determine the taxpayer's excess profits credit under section 713(a), 26 U.S.C.A. § 713(a). After the amount of the excess profits credit is determined, the specific exemption, if any, the excess profits credit and the unused excess profits credit, if any, are deducted from the excess profits net income in arriving at the adjusted excess profits net income. The unused ex-

cess profits credit is the amount of the unused excess profits credit adjustment computed under subsection (c) of section 710. Subsection (c) (1) provides that the adjustment is the aggregate of the unused excess profits credit carry-overs and unused excess profits credit carry-backs. Subsection (c) (2) provides: " * * * The term 'unused excess profits credit' means the excess, if any, of the excess profits credit for any taxable year beginning after December 31, 1939, over the excess profits net income for such taxable year, computed on the basis of the excess profits credit applicable to such taxable year. * * *" Paragraph (3) of section 710(c) provides: " * * * (A) If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-back for each of the two preceding taxable years * * *." Because of the interrelationship of sections 740, 742, 713 and 710, the literal language of the code specifically provides for such a carry-back of an unused excess profits credit.

The defendant contends, however, that since Congress was specific in setting forth in section 742 how the average base period net income should be determined when there was a merger, consolidation, or other joinder of taxpayers, and did not expressly state in that section that an acquiring corporation was entitled to a carry-back, or carry-over of an unused excess profit credit, Congress did not intend to allow such a carry-back or carry-over. The Tax Court appears to have adopted this position. Stanton Brewery, Inc., v. Commissioner, 11 T.C. 310, reversed 2 Cir., 176 F.2d 573; California Casket Co. v. Commissioner, 19 T.C. 32. We cannot agree.

The defendant's argument based on section 742 is not well founded. Section 742 strengthens rather than weakens plaintiff's case. That section provides, what would otherwise be lacking in specificity, that the acquiring corporation can use its components' base period ex-

perience to determine its average base period net income, which in turn is used to determine its excess profit credit. Section 742 is merely a stepping stone for the plaintiff in determining its excess profits credit. It does not pretend to cover all problems or questions that may arise from a merger and is not a restriction on section 710(c) (3). We think it is clear that the section 742 average base period net income is used just the same as the section 713 average base period net income to determine the taxpayer's excess profits credit under section 713(a). Once the excess profits credit is determined under section 713 (a), section 742 has served its purpose. Section 710 then comes into play and provides how the credit is to be employed. As is seen from the above analysis the excess profits credit based on the average base period net income determined under section 742 is used the same in sections 713(a) and 710 as the average base period net income determined under section 713. Thus a taxpayer which qualifies under section 740 to compute its average base period net income under section 742 is treated by the code, for the purpose of the excess profits credit and its use, as the same taxpayer as its components.

The amendment to subsection (c) of section 710 allowing the carry-back of an unused excess profits credit was enacted at the same time sections 740 and 742 were amended.[2] If Congress had desired to restrict the benefit of the unused excess profits credit carry-back to those corporations which computed their average base period net income under section 713, it would appear that it would have specifically done so. No such restriction was imposed. Also, when the purpose of the excess profits tax provisions of confiscating excess profits is considered in conjunction with the purpose of section 710(c) of ameliorating the fluctuations in profits for the over-all purpose of exacting the true *excess* profits, it is difficult to find a distinction of substance between a surviving corporation in a tax-free reorganization which continues the same business with substantially the same stockholders and which is allowed to use its components' base period experience, and a corporation that has undergone no change in form. When we turn to the unused excess profits credit carry-back's counterpart (the unused excess profits credit carry-over) the question is somewhat complicated. The interrelationship of the applicable sections does not automatically and so clearly allow the carry-over of an unused excess profits credit from the component corporations to the surviving corporation. Also, in connection with mergers, consolidations and other joinders of taxpayers, a net operating loss, capital loss, and pension and profit sharing carry-backs and carry-overs, are not clearly covered by the code. The fact that these other carry-back and carry-over provisions are not as clearly covered by the code may suggest that coverage of the unused excess profits credit carry-back in this type of situation was more fortuitous than intentional. Fortuitous or not, the code clearly allows such a carry-back of an unused excess profits credit. Moreover, if the surviving corporation is treated for tax purposes as the same "taxpayer" as its components or predecessors, the carry-backs and carry-overs are covered by the code.

We think the approach taken in Stanton Brewery, Inc., v. Commissioner, 2 Cir., 176 F.2d 573, 575, was sound and in accord with the existing statutory scheme and legislative policy relative to tax problems and consequences of corporate reorganizations. The issue presented in that case was whether the surviving corporation in a statutory merger was entitled to carry over an unused excess profits credit of one of its components. The court, with Judge L. Hand dissenting, held that the carry-over was available under section 710(c) (3) (B). It pointed out the overly technical and unrealistic approach in attempting to de-

---

2. Revenue Act of 1942, 56 Stat. 798, 900, 923, 925. See footnote 4.

termine which corporation merged into which in order to ascertain which corporation had the credit. The court then stated:

> " * * * We doubt, therefore, that any of these linguistic formulae suggests a really fruitful approach to the solution of our present problem. More properly we must regard the 'resulting corporation' as the union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents."

The plaintiff, of course, relies on the Stanton Brewery case, and the defendant contends that it was incorrectly decided. Essentially the same arguments were presented in that case as in the instant case and what the court said there sustaining the taxpayer's position and disposing of the defendant's position is applicable to the facts of the present case.

The surviving corporation in a statutory merger represents the continuation of a business that was operated before in the form of its constituents. For practical, business, and many tax purposes, it is treated the same as its components which formed it. It accedes to the rights and privileges as well as the obligations of its components by operation of law. It becomes primarily liable for the tax obligations of its components as the taxpayer and not secondarily liable as a transferee. See Commissioner of Internal Revenue v. Oswego Falls Corporation, 2 Cir., 71 F.2d 673. It is treated as the taxpayer involving transactions of its constituents before the merger for purposes of review by the Tax Court. Bowman Hotel Corporation v. Commissioner, 24 B.T.A. 1193 and the cases following that decision. It was treated the same for dividend carry-over in Adrian & James, Inc., v. Commissioner, 4 T.C. 708; for carry-over of the adjusted declared value for capital stock tax purposes in Early v. Southgate Corporation, 4 Cir., 136 F.2d 217; and the deduction of unamortized bond discount and expense in connection with a redemption of bonds of a constituent company in Helvering v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 638, 83 L.Ed. 957.

The Supreme Court stated in the Metropolitan Edison Co. case that the transaction had "all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee. It results that the continuing corporation may deduct unamortized bond discount and expense in respect of the obligations of the transferring affiliate." Although the Metropolitan Edison Co. case may be distinguishable on the ground that the unamortized bond discount and expenses in respect to bond retirement was a direct expense of the surviving corporation and not a loss of the merged component, the case was not decided on that ground.

It also may be noted that the Sansome rule was originally predicated on the theory that the surviving corporation in a tax free reorganization was a continuation of the prior corporations for the purpose of determining distribution of earnings and profits as distinguished from capital distributions of the survivor. Commissioner of Internal Revenue v. Sansome, 2 Cir., 60 F.2d 931, certiorari denied Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575. In Commissioner of Internal Revenue v. Munter, 331 U.S. 210, 213, 67 S.Ct. 1175, 1176, 91 L.Ed. 1441, the Court stated that the Sansome rule "for tax purposes, treats a reorganized corporation as but a continuation of its predecessors * * *." The Court held that the rule was applicable notwithstanding the participation of new investors in the successor corporation. In Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771, the necessity of preventing the escape of earnings and profits from taxation was substituted as the underlying rationale by the Court in holding that the earnings and profits of the survivor were not erased by the deficits of the merged components.

The defendant contends that New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, involving a net-operating loss carry-over, is more analogous to the instant case. In the New Colonial Ice Co. case the creditors and stockholders of the old corporation organized a new corporation which continued the business, purchased the assets, and assumed the liabilities of the old corporation. The old corporation continued in existence for more than a year. The new corporation claimed the net operating loss of the old corporation. In denying the carry-over, the Supreme Court stated that the two corporations were separate and distinct entities, the loss was personal and that the carry-over was an exception to the general rule and unless Congress indicated a clear intention to allow such a carry-over, it should not be allowed.

The plaintiff distinguishes the New Colonial Ice Co. case on the ground that it involved a purchase of the assets and assumption of the liabilities, whereas the Metropolitan Edison Co. case and the instant case deal with mergers. The Supreme Court's decision in the Metropolitan Edison Co. case was based on the earlier developed distinction between a merger or consolidation and a purchase of the assets and assumption of the liabilities of the predecessor. The corporation which was merged or consolidated was treated essentially the same as its components, since the transfer was by operation of law, whereas the corporation which purchased the assets and assumed the liabilities of its predecessor was treated as a separate taxable entity. American Gas & Electric Co. v. United States, 17 F.Supp. 151, 84 Ct.Cl. 92, 105. The Commissioner adopted and followed this distinction for many years. Recently, however, he has abandoned it and taken the position that the corporations are separate and distinct taxpayers.

A discussion of the New Colonial Ice Co. doctrine in view of the change in legislative policy is deemed appropriate. That case was decided under the restrictive language of section 204(b) of the Revenue Act of 1921, 42 Stat. 227, 231. The pertinent part of that section provided that if "any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year * * *." The Court referred to the general policy of the statute and stated that nothing in that policy indicated an intention to allow the successor corporation the net operating loss of its predecessor.

■ The legislative policy and statutory scheme since the 1921 Revenue Act reflects a more liberal and realistic approach to problems arising from corporate reorganizations.[3] The language of the carry-back and carry-over provisions have been broadened and the years available for leveling out the fluctuations in earnings have been extended.[4] Elaborate corporate reorganization provisions have been inserted in the code liberalizing the tax free exchange provisions to allow non-recognition of gain or loss on more transactions and the carry-over of the basis of the old corporation's assets and generally conferring upon the new corporation the same tax status of the old corporation. The purpose of these provisions was to allow the corporation to make formal readjustments and carry out ordinary business transactions without disastrous tax consequences.[5] In tax free reorganizations, the successor corporation is entitled under section 742 to use the average base period net income of its components, with certain adjustments, in determining its excess

3. See N.Y.U. Sixth Inst.Fed.Tax 327 (1948) for an analysis of the New Colonial Ice Co. case under present law.

4. See H.Rep.No.855, 76th Cong. 1st Sess. 9; H.Rep.No.146, 77th Cong. 1st Sess. 2; S.Rep.No.1631, 77th Cong.2d Sess. 51–52.

5. H.Rep.No.179, 68th Cong., 1st Sess. 13; S.Rep.No.398, 68th Cong., 1st Sess. 14–15 See section 129 of the Code, 26 U.S. C.A. § 129, which was designed to prevent tax avoidance by devices or schemes.

profits credit. The changes reflect a legislative policy of having tax consequences of tax free reorganizations turn on matters of substance rather than technicality or form. In interpreting the taxing statute the courts look to the substance of the transaction rather than its form and the status of the taxpayer depends on an interpretation of the sections under review in light of the purpose for which they were designed. Two taxpayers are generally considered as separate and distinct, but when the purpose of Congress is better fulfilled they are treated as one taxpayer. See Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Ingle Coal Corp. v. United States, Ct.Cl., 127 F.Supp. 573; Stanton Brewery, Inc., v. Commissioner, supra, and cases there cited. Whether the New Colonial Ice Co. case should still be held controlling in the non-merger and consolidation cases in view of the changes in legislative policy is not necessary for us to decide since the plaintiff does not fall within that category.

█ The defendant relies on Public Law 189, 80th Cong., 1st Sess., Act of July 15, 1947, 61 Stat. 324, 26 U.S.C. § 122 note, to support its contention that Congress did not intend to permit a surviving corporation in a statutory merger to have the benefit of the carry-back provisions. That act allowed reorganized bankrupt railroads the benefit of the carry-over and carry-back provisions regardless of whether they were reorganized under the same charter or a new charter. Some state laws prohibited the use of the same charter and some courts were holding that the reorganized railroad under a new charter was not the same taxpayer. The purpose of the act was to remedy this inequality.[6] We think that act represents a clarification rather than a change in the existing law. See Stanton Brewery, Inc., v. Commissioner, supra, 176 F.2d at page 577.

Not only does the code support the plaintiff, but also the decision of the Supreme Court in the Metropolitan Edison Co. case, treating the surviving corporation in a merger as the same taxpayer as its components for the purpose of allowing unamortized bond discount loss of its component to be deducted by the survivor, amply supports the plaintiff's position that it should be treated as the same taxpayer as its components for the purpose of an unused excess profits credit carry-back to reduce the consolidated excess profits net income of the corporations which were merged. The plaintiff's right to the carry-back is further supported by the change in legislative policy and statutory scheme of adopting a more realistic and practical approach to the problems arising out of corporate reorganizations, which is reflected in the statutory changes recognizing and treating the surviving corporation as essentially the same taxpayer as its components or predecessors.

We are aware of section 381 of the 1954 Code, 68 A. Stat. 124, 26 U.S.C.A., which specifically provides for carry-overs in certain corporate acquisitions and specifically denies the carry-back of a net operating loss except where the change was merely one of identity, form, or place of organization. We feel that this section, to the extent that it specifically allows carry-overs, reflects a continuation of the previous realistic approach to corporate reorganization problems and that the provision specifically disallowing a net operating loss carry-back is a change in prior policy and law. The defendant admitted that the Commissioner has for years adopted the position that the surviving corporation in a merger or consolidation was entitled to carry back or over the net operating loss of its components or predecessor and generally treating the new corporation the same as the old corporation. The Committee Reports [7] accompanying H. R. 8300, which became the Internal Revenue Code of 1954, state: "No inference is to be drawn from the enactment of this section whether any item or tax at-

---

6. H.Rep.No.624, 80th Cong. 1st Sess. 1.

7. H.Rep.No.1337, 83rd Cong.2d Sess. 135; S.Rep.No.1622, 83rd Cong., 2d Sess. 277.

tribute may be utilized by a successor or a predecessor corporation under existing law."

Inasmuch as we have decided that plaintiff is entitled to carry back its unused excess profits credit to the second preceding taxable year to reduce the consolidated excess profits net income of the companies which were merged, the question of the amount of the carry-back is presented. The amount of the carry-back depends on the amount of the excess profits credit, which credit depends on whether the plaintiff is entitled to use the constructive average base period net income, or is required to use the average base period net income of its components adjusted for the short taxable period. If the excess profits credit is based on the constructive average base period net income of the plaintiff's components, the amount of the carry-back is $435,551.74, as the plaintiff contends. If the excess profits credit is based on the average base period net income of the plaintiff's components, the amount of the carry-back is $384,517.64, as the defendant contends.

The defendant contends that the section 722 determination is only applicable to a particular taxpayer for a single taxable period. It is true that the Commissioner has the power under section 722 to redetermine the section 722 allowance each year. In many cases it is necessary to redetermine the allowance in order to ascertain what is a fair and normal average income. An example is where some or all of the component corporations were not in existence during the base period years. However, section 722 provides that the Commissioner may by regulation prescribe the extent to which the limitations of that section can be waived for the determination of the tax for subsequent taxable years. Regulation 112, Sec. 35.722–5 (e) provides that if no substantial evidence exists which requires a redetermination of the constructive average base period net income, it may be used by the taxpayer in subsequent taxable years. However, it also provides:

"* * * If a taxpayer, which pursuant to the preceding sentence would otherwise be entitled to use a constructive average base period net income previously determined, is acquired by another corporation in a transaction which under Supplement A constitutes it a component corporation and the transferee an acquiring corporation, or if such taxpayer becomes a member of an affiliated group which makes a consolidated excess profits tax return, the average base period net income of the acquiring corporation, or the consolidated average base period net income of the affiliated group, as the case may be, may not as of right include such constructive average base period net income. * * *"

In such cases it provides that the acquiring corporation must file an application and establish its eligibility for relief.

From the defendant's argument on this point, it is not clear whether it disputes the plaintiff's right to use its components' constructive average base period net income to determine its excess profits tax credit, or whether the defendant concedes the plaintiff's right to use its components' constructive average base period net income for purposes of determining its excess profits credit, but disputes plaintiff's right to carry back any of the unused excess profits credit which resulted from the increase allowed under section 722. If the latter is its position, our above discussion allowing the carry-back of an unused excess profits credit based on the average base period net income, section 722 and the Commissioner's regulations dispose of this point in favor of the plaintiff. However, if the former is the defendant's position, the plaintiff, in order to use the constructive average base period net income as the basis for its carry-back, needs the Commissioner's consent to use its components' constructive average base period net income, or his determination of the proper constructive average base period net income pursuant to section 722. By reason of section 732, 26 U.S.C.A. §

732, we have no jurisdiction to determine what plaintiff's constructive average base period net income should be.

The plaintiff is entitled to carry back the unused excess profits credit based on its average base period net income, under section 710(c) (3) (A), to reduce the 1943 consolidated excess profits net income of the companies merged and to recover the overpayment resulting therefrom, with interest as provided by law. Whether plaintiff is entitled to a carryback based on the constructive average base period net income depends on defendant's position. The defendant is requested to file a memorandum clarifying its position with respect to the problem mentioned by reason of the section 722 allowance. Plaintiff will be allowed 20 days to file a reply thereto.

Entry of judgment is suspended pending the filing of defendant's and plaintiff's memorandum briefs and a stipulation by the parties showing the amount due plaintiff in accordance with this opinion.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.