E. & J. GALLO WINERY, a corporation, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 14180.

United States Court of Appeals Ninth Circuit.

Nov. 9, 1955.

---

Charles L. Barnard, San Francisco, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Hilbert P. Zarky, Ellis N. Slack, Morton K. Rothschild, Sp. Assts. to Atty. Gen., John Potts Barnes, Chief Counsel, I. R. S., Chicago, Ill., for respondent.

Before STEPHENS and LEMMON, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This case arises on an amended petition to review a decision of the Tax Court of the United States. It involves a merger of corporations, and raises the question whether the taxpayer, Gallo Winery, (hereafter Gallo) may use the unused excess profits tax credit of Valley Agricultural Company, (hereafter Valley), the merged corporation, as a carry-over under Sec. 710(b) (3) and (c) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 710(b) (3), (c) for its taxable year ending April 30, 1946.

The case was tried below on a stipulation of facts. A memorandum opinion was filed, the equivalent of findings, and a decision entered on August 31, 1953. Within time the petition for review was filed. The opinion and decision below was not officially reported.

The facts are as follows: Gallo, the taxpayer, was incorporated under the laws of California on May 28, 1942, under the name of Gallo Tank Lines, to engage in the railroad tank car business. On March 9, 1944, Gallo amended its articles of incorporation so as to substitute its present name for Gallo Tank Lines and to authorize it to engage in the winery business.

Valley was incorporated under the laws of the State of California on March 6, 1926.

On December 19, 1945, by proceedings duly had and taken in accordance with Section 361 of the California Civil Code,* Valley was merged with and into Gallo.

* Now West's Ann.Corp.Code, §§ 4100–4117.

Pursuant to that section, an agreement for the merger was approved by the board of directors of each of the two corporations on November 7, 1945. The execution of the merger agreement was delayed until the following month, pending the result of a hearing by the Commissioner of Corporations of California, on the fairness of the terms and conditions thereof. The Commissioner of Corporations approved the terms and conditions on December 7, 1945, and the merger was effected on December 19, 1945.

Valley filed a tax return for its last taxable year of operation beginning January 1, 1945, and ending December 18, 1945.

The excess profits credit of Valley was $169,478.26. Its excess profits net income for the same taxable year was $102,777.22, and after annualization in accordance with Regulations 112, Section 35.710–3, the annual net income for the year totaled $106,572.97. Accordingly, the unused excess profits credit of Valley for its taxable year was $60,664.-83.

Gallo's fiscal year ran from May 1, 1945 to April 30, 1946, and its excess profits tax net income for its fiscal year was in excess of $589,000.00.[1]

The Tax Court held that Gallo was not entitled to use, in its taxable year ended April 30, 1946, any unused excess profits credit of Valley arising out of the latter's taxable year ended December 18, 1945. The correctness of this decision is the sole question presented on this appeal. All other disputes have been adjusted or conceded by the parties.

There is no contention by Respondent that Gallo acquired in Valley a hollow shell for tax deduction purposes. In the Revenue Act of 1943, amending Sec. 129 of the Internal Revenue Code of 1939, Congress provided against such practices. Section 128, Revenue Act of 1943, Act of Feb. 25, 1944, 58 Stat. 21 et seq., 26 U.S.C.A. § 129. Respondent has not cited or relied upon this statute.

Section 710 of the Internal Revenue Code, 26 U.S.C.A. § 710, pertinent to our problem, is set forth in the margin.[2]

1. Gallo makes its computations on the basis of the notice of deficiency, the stipulation of facts and the opinion of the tax court. We compute $596,517.74. The exact amount is not pertinent to this decision.

2. Internal Revenue Code of 1939:
"Chapter 2—Additional Income Taxes
\* \* \* \* \*
"Subchapter E—Excess Profits Tax
"Part I
" § 710 [as added by Sec. 201, Second Revenue Act of 1940, c. 757, 54 Stat. 974]. Imposition of Tax
"(a) Imposition.—
"(1) [as amended by Sec. 202, Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 202, Revenue Act of 1943, c. 63, 58 Stat. 21] General rule. There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax equal to whichever of the following amounts is the lesser:
"(A) 95 per centum of the adjusted excess profits net income, or

"(B) an amount which when added to the tax imposed for the taxable year under Chapter 1 (other than section 102) equals 80 per centum of the corporation surtax net income, computed under section 15 or Supplement G, as the case may be,
\* \* \*.
\* \* \* \* \*
"(b) [as amended by Sec. 2(a), Excess Profits Tax Amendments of 1941, c. 10, 55 Stat. 17, and Sec. 204(a), Revenue Act of 1942, supra] Definition of adjusted excess profits net income. As used in this section, the term 'adjusted excess profits net income' in the case of any taxable year means the excess profits net income (as defined in section 711) minus the sum of:
"(1) Specific exemption. \* \* \*
"(2) Excess profits credit. The amount of the excess profits credit allowed under section 712; and
"(3) Unused excess profits credit. The amount of the unused excess profits credit adjustment for the taxable year, computed in accordance with subsection (c).
"(c) [as added by Sec. 2(b), Excess Profits Tax Amendments of 1941, supra,

## 1.

### There Occurred a True Merger

The merger of Gallo and Valley was pursuant to California law and was a statutory merger. Sec. 361, Civil Code of California in effect in 1945,[3] the date of the merger provides in subd. (5) that upon following the statutory procedure, the merging corporations, "shall be one corporation"; and in subd. (7) "upon the merger * * * the separate existence of the constituent corporations shall cease, except that of the surviving corporation * * *".

In Mutual Building & Loan Ass'n of Pasadena v. Wiborg, 1943, 59 Cal.App.2d 325, 139 P.2d 73, the California court said of a merger under Sec. 361 Civil Code: "By virtue of the merger, the separate corporate existence of Title Guarantee suffered the fate of all merged corporations, to wit, they became a part of the muscle and the blood stream of the mergee corporation, transfusing into the mergee all its (their) rights and privileges * * *", 59 Cal.App.2d at page 328, 139 P.2d at page 74. "While the Title Guarantee merger with Title Insurance caused it to lose its identity as to its separate existence, yet *it became an integral part of Title Insurance*, and carried with it all of its rights, powers, liabilities, and assets 'except the indicia and attributes of a corporate body, distinct from that into which it is

merged.' " 59 Cal.App.2d at page 329, 139 P.2d at page 75. [Emphasis supplied.]

Valley therefore, on merger with Gallo, under California law, became an integral part of Gallo by statutory merger.

## 2.

### The Supreme Court Cases

New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, involved a construction of Sec. 204(b) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 231, a statute permitting a taxpayer to carry over to a succeeding year, a loss from a prior year, and thus very similar to the statute involved in this case. The court rejected a contention that for all practical purposes, a successor corporation, where no merger existed, was the same entity as the old one and therefore the same taxpayer. The court pointed out various reasons why there was no basis for the contention, 292 U.S. at page 441, 54 S.Ct. 788. These, petitioner refers to as the requirements laid down by the Supreme Court for establishing identity between the two corporations. Suffice it to say that if these were requirements for such a test, the Gallo-Valley merger met them all. In Gallo there was a true statutory merger. In New Colonial, there was nothing resembling a merger.

and amended by Sec. 204(b), Revenue Act of 1942, supra] Unused excess profits credit adjustment.

"(1) Computation of unused excess profits credit adjustment. The unused excess profits credit adjustment for any taxable year shall be the aggregate of the unused excess profits credit carry-overs and unused excess profits credit carry-backs to such taxable year.

"(2) Definition of unused excess profits credit. The term 'unused excess profits credit' means the excess, if any, of the excess profits credit for any taxable year beginning after December 31, 1939, over the excess profits net income for such taxable year, computed on the basis of the ex-

cess profits credit applicable to such taxable year. * * *

"(3) Amount of unused excess profits credits carry-back and carry-over.

"(A) Unused excess profits credit carry-back. * * *

"(B) Unused excess profits credit carry-over. If for any taxable year beginning after December 31, 1939, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years, * * *.

26 U.S.C.A. § 710.

3. In 1947, the substance of the section and others involving corporations became part of the Corporations Code of California.

Helvering v. Metropolitan Edison Co., 1939, 306 U.S. 522, at page 523, 59 S.Ct. 634, at page 635, 83 L.Ed. 957, presented the question as to "whether under the Revenue Acts of 1926 and 1928, a Pennsylvania corporation may deduct unamortized bond discount and expense in connection with redemption of the bonds of a subsidiary, all of whose assets it had previously acquired pursuant to local law." The circuit court had reversed the Board of Tax Appeals and answered the question in the affirmative. The Supreme Court affirmed the Circuit.

Helvering, the Commissioner of Internal Revenue, conceded that if a true merger existed, the decision below was correct, but contended the transaction was a mere sale by one corporation of all its assets to another which assumes the liability of the former.[4] The respondents therein, contended the transaction constituted merger under Pennsylvania law. The court said the question was solely one of Pennsylvania law and proceeded to analyse that law. This much of Helvering v. Metropolitan Edison Co., supra, the petitioner herein refers to as the "major premise" in that case.

As to the two transactions, involving two sets of corporations, the court held as to one, that it "has all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee", and as to the other transaction, "the transfer in question constituted a de facto merger * * *". The

final holding was that "the continuing corporation may deduct unamortized bond discount and expense in respect of the obligations of the transferring affiliate." 306 U.S. at page 529, 59 S.Ct. at page 638.

Respondent concedes "that a successor corporation may in some instances succeed to a deduction which its submerged corporation would otherwise have had, as in Helvering" * * * (supra). We believe that the Supreme Court held, a fortiori, that in the event of a true statutory merger, the mergee corporation was entitled to the deductions of the other corporation.

New Colonial Ice Co., supra, had pointed out that "the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i. e., to treat them as personal to him and not transferable to or usable by another." 292 U.S. at page 440, 54 S.Ct. at page 790. Thus the Supreme Court held in substance in Metropolitan Edison Co., supra, that the old corporation continued in the new as so integral a part, that it might use, acting through the identity of the new corporation, its own deductions.

### 3.

#### The Stanton Case

Gallo relies upon, and the Commissioner attacks Stanton Brewery, Inc., v. C.I. R., 2 Cir., 1949, 176 F.2d 573.[5] There the corporate transaction was between an operating company and a holding com-

---

4. The Supreme court did more than merely accept the concession of the Commissioner. In 306 U.S. note 9, at page 526, 59 S.Ct. note 9, at page 637, it set forth authorities on mergers with continuing identity of the corporation in the successor and with right to deduct unamortized bond discount and expense. In 306 U.S. note 10, at page 527, 59 S. Ct. note 10, at page 637, it set forth cases involving mere sales. Two of the cases appear in each note, American Gas & Electric Co. v. Commissioner, 2 Cir., 85 F.2d 527 and American Gas & Electric Co. v. United States, 1936, 17 F.Supp. 151, 158, 84 Ct.Cl. 92, and each involv-

ed separate sets of corporate transactions which represent both sides of the coin.

5. See Newmarket Manufacturing Co. v. United States, D.C.Mass.1955, 130 F. Supp. 706, and Commonwealth Title Co. of Philadelphia v. Rothensies, D.C.Pa. 1954, 124 F.Supp. 274, 284, where views contrary to Stanton, supra, are expressed; Koppers Co., Inc., v. United States, Ct. Cl., 134 F.Supp. 290, which finds support in Stanton, supra; and 2 Stanford Law Review 422, Comment on the Stanton case. A. B. C. Brewing Corp. v. C. I. R., 9 Cir., 224 F.2d 483, cited by respondent, involves a different point and is not in conflict.

pany and the court termed it a "merger."[6] The tax year was 1942 and a carry over of the unused excess profits credits of the component corporations for years 1940 and 1941 under the same statutes involved here, was held proper.

Relying on Sec. 710(c) (3) (B), Title 26 U.S.C.A. § 710(c) (3) (B), "If for any taxable year beginning after December 31, 1939, the *taxpayer* has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years * * *", [Emphasis added], the petitioner contended and the court held that "as the 'taxpayer' in the quotation, it is entitled to the carry-over from its component operating company's unused excess profits credit", 176 F.2d at page 574. "Hence we conclude that under the natural interpretation of § 710, petitioner, who has absorbed the two former corporations, is 'the taxpayer' now obligated to pay their taxes and entitled to their credits." 176 F.2d at page 576.

Respondent herein makes much of the word "taxpayer" in Sec. 710(c) (3) (B). In Stanton, supra, the court relied on decisions holding that such a resulting corporation was the "taxpayer" primarily liable for the tax obligations of a component, C. I. R. v. Oswego Falls Corp., 2 Cir., 1934, 71 F.2d 673, 676, and was entitled to its component's deductions, Koppers Coal Co. v. Com'r, 6 T.C. 1209, 1223, and others relating to the word "taxpayer" in similar situations. The court also relied upon Helvering v. Metropolitan Edison Co., supra.

We hold and Stanton held, that the surviving corporation is the "taxpayer," who may use the unused excess profits tax credit of the former corporation.[7]

Petitioner characterizes the Stanton case, supra, as applying the *holding* of Metropolitan Edison Co. rather than its major premise. *A fortiori*, the rule would apply with at least equal force in the case of a true statutory merger such as exists in our case. Respondents' position is in substance an attack on Metropolitan Edison Co. and a direct attack on the correctness of Stanton.

The court in Stanton was not impressed by the merger argument. It said, "more properly we must regard the 'resulting corporation' as the union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents." 176 F.2d at page 575.

We think that whether or not there was a true statutory merger and whether the identity of the old corporation continued in the surviving corporation, is a question of state law. This was the approach in Helvering v. Metropolitan Edison Co., supra, 306 U.S. at page 527, 59 S.Ct. 634, in Jones v. Noble Drilling Co., 10 Cir., 1943, 135 F.2d 721, at page 724, in American Gas & Electric Co. v. C. I. R., 2 Cir., 1936, 85 F.2d 527, 531, and in Pennsylvania Co. for In-

---

6. Though the court characterized the transaction as a "merger", under California law it would probably have been a "consolidation," former section 361, California Civil Code; Metropolitan Edison Co. v. C. I. R., 3 Cir., 1938, 98 F.2d 807, 810. In any event it was not a "sale" as the term is used in the cases.

7. Jones v. Noble Drilling Co., 10 Cir., 1943, 135 F.2d 721, not cited or relied on by respondent herein, is not necessarily in conflict. The court first interpreted Delaware law and held against the taxpayer's contention that under such law, the former corporations "continued to exist as parts of surviving corporation". 135 F.2d at page 721.

Alternatively the court found that Section 27 of the Revenue Acts of 1936 and 1938 "do not in terms give to the corporate taxpayer the right to deduct dividends paid by another corporation." this holding is distinguished in Stanton on the basis of the different language of the statutes involved. 176 F.2d at page 576.

Compare California law in Mutual Building & Loan Ass'n v. Wiborg, supra, [59 Cal.App.2d 325, 139 P.2d 75] that the old corporation "became an integral part" of the surviving corporation.

surances on Lives and Granting Annuities v. C. I. R., 3 Cir., 1935, 75 F.2d 719, 721.

We do not doubt that a state law in conflict with a federal tax statute would not control, see Stanton Brewery, supra, 176 F.2d note 1, at page 575, but we are equally sure that state law controls in determining what state law has created, and in supplying foundation material in many tax situations.

██ If state law controls in determining the character and content of the continuing corporation on a merger, then under the major premise, or the *a fortiori* holding of Helvering v. Metropolitan Edison Co., supra, Valley continued as an integral part of Gallo. If state law does not control as to the character and content of the continuing corporation, and there was not a true merger of Gallo and Valley, in any event Valley was "drowned" in Gallo, Metropolitan Edison Co., supra, and Gallo, the surviving corporation, was the "taxpayer," and could use the credit, which belonged to a part of Gallo. Stanton, supra.

### 4.

### Bond Discount and Expense v. Unused Excess Profit Tax Credit

Helvering v. Metropolitan Edison Co., supra, involved unamortized bond discount and expense. Stanton Brewery, Inc., v. C. I. R., supra, and the case at bar involved loss carry-forward of unused excess profit tax credits. Deductions are "a matter of legislative grace and * * * the burden of clearly showing the right to the claimed deduction is on the taxpayer", Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607. They are also personal to the taxpayer and "not transferable to or usable by another", New Colonial Ice Co. v. Helvering, supra, 292 U.S. at page 440, 54 S.Ct. at page 790. Allowance of bond discount and expense is not specifically

provided for but is apparently based on Sec. 23 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 23, providing for deduction of expense and losses, fortified by court decisions. Helvering v. Metropolitan Edison Co., supra, and cases cited in 306 U.S. note 9, at page 526, 59 S.Ct. note 9, at page 637.[8] Provision for deduction of loss carry-forward in computing net income is found in Sec. 23(s) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 23(s), and provisions for the deduction of the unused excess profits tax credit in computing adjusted excess profits net income appear in Sec. 710(b) (3) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 710(b) (3). We fail to see a distinction which makes one a deduction by legislative grace, and not the other.

Respondent argues that Stanton, supra, is based on a fiction and that deductions may not be based on fictions. Possibly the concept that the former corporation continues its identity and is an integral part of the successor is a fiction. (The so-called major premise in Helvering v. Metropolitan Edison Co., supra.) Possibly, the concept that the earlier corporation is "drowned" in the successor is a fiction, Helvering v. Metropolitan Edison Co., supra, 306 U.S. at page 529, 59 S.Ct. 634. But the successor corporation was allowed the deduction of the "drowned" corporation. If the fiction can support a bond expense deduction, it can bear the weight of an unused excess profits tax credit.

### 5.

### Legislative Intent

Respondent raises the question of legislative intent with respect to Sec. 710 of the 1939 Internal Revenue Code and says that if Congress had intended the result herein, it would have said so.

Respondent points to Part II, Supplement A, Sections 740–744, of subchapter E of the 1939 Internal Revenue Code, respecting the computation of excess

---

**8.** The general pattern of the 1939 Internal Revenue Code corresponds to the Revenue Act of 1928 which was involved ██ in Helvering v. Metropolitan Edison Co., supra.

profits credit based on the income of a so called "acquiring" corporation. These sections were added by the Act of October 8, 1940, C. 757, Title II, Sec. 201, 54 Stat. 991, as later amended, 26 U.S. C.A.1952 Ed. §§ 740–744. Sec. 710 of the 1939 Internal Revenue Code, 26 U.S.C.A. 1952 Ed. § 710, was added by the same Act, Oct. 8, 1940, c. 757, Title II, Sec. 201, 54 Stat. 975. Passed at the same time by Congress, they must be considered as part of the whole. Sections 740–744 included many situations entirely different from merger or from "drowning" of a prior corporation in a survivor. The sections were necessary for such other situations but it does not follow that the sections detracted from the express provisions of Sec. 710(c) for unused excess profits credit carry-over.[9] The same contention was advanced and rejected in Stanton Brewery, Inc., v. C. I. R., supra, 176 F.2d at pages 576–577.

Moreover, New Colonial Ice Co. v. Commissioner, supra, with its intimation that in a merger situation the result would be different, and Helvering v. Metropolitan Edison Co., decided in 1934 and 1939 respectively, were in the official reports when in 1940 Congress enacted Sec. 710 on October 8, 1940. Section 710 must be read in the light of these decisions, United States v. Merriam, 1923, 263 U.S. 179, 187, 44 S.Ct. 69, 68 L.Ed. 240. Legislative construction is an aid to statutory interpretation, Alaska Steamship Co. v. United States, 1933, 290 U.S. 256, 54 S.Ct. 159, 78 L.Ed. 302; First National Bank in St. Louis v. State of Missouri, 1924, 263 U.S. 640, 658, 44 S.Ct. 213, 68 L.Ed. 486.[10]

Nor does Section 1 of the Act of July 15, 1947, c. 249, 61 Stat. 324, 26 U.S.C.A. § 122 note, show Congressional intent that Sec. 710, should be applied differently from the way in which we have applied it. By the statute, Congress retroactively granted relief to certain railroad corporations by way of net operating loss carry-over and excess profits credit carry-over, from a predecessor corporation. The statute gave this benefit to a railroad corporation which acquired property from another railroad corporation "in a receivership proceeding, or in a proceeding under section 77 of the National Bankruptcy Act."

Such a new corporation would not result from merger under state law nor would there be "drowned" in it, a predecessor. Without the 1947 statute it could clearly not claim the benefits of Sec. 710. The House Report No. 624, 80th Congress, 1st Session, 1947 U.S. Code Cong.Service, p. 1297, states, "Under existing law * * * The reorganized corporation is regarded as a different taxpayer from the old corporation." Like Stanton Brewery, Inc., v. C. I. R., supra, which considered the same contention, we think any Congressional intent revealed by the statute "suggests the opposite conclusion", 176 F.2d at page 577, from respondent's contention.

### 6.
### Repeal of the Excess Profits Tax

█ The Revenue Act of 1945, c. 453, 59 Stat. 556, Sec. 122, 26 U.S.C.A. Int.Rev.Acts, repealed the excess profits tax. We are not in accord with respondent's reading of that Section. He states "The excess profits tax statutes were repealed as of December 31, 1945, except for the computation during the calendar year 1946, of an excess profit credit which could be carried *back* to prior years."

Although subd. (a) of Sec. 122 provided *generally* that "the provision of subchapter E of chapter 2" Secs. 710–740, U.S.C.A. Title 26 "shall not apply to

9. Koppers Co., Inc., v. United States, Ct.Cl., 134 F.Supp. 290, 293, 294.

10. Note also that Congress in enacting the Excess Profits Tax Act of 1950, Act of Jan. 3, 1951, c. 1199, Title I, Section 101, 64 Stat. 1137 et seq., 26 U.S.C.A. §§ 430–472, effective as to tax years ending after June 30, 1950, in defining the unused excess profits credit carry-back and carry-over used the same language as Sec. 710(c) (3) (A) and (B) except as to dates, notwithstanding the 1949 decision of the Second Circuit in Stanton Brewery, Inc., v. C. I. R., supra.

any taxable year beginning after December 31, 1945", subdivision (b) of Sec. 122 provided the subchapter "shall remain in force for the purpose of the determination of the taxes imposed by such subchapter for taxable years beginning before January 1, 1946" subject to subd. (c) of Sec. 122 and Sec. 131 of the Revenue Act of 1945.

Subd. (c) of Sec. 122 added to the end of Sec. 710(c) (2) (definition of unused excess profits credit), the following sentence, " 'There shall be no unused excess profits credit for a taxable year beginning after *December 31, 1946*. The unused excess profits credit for a taxable year beginning in 1946 and ending in 1947 shall be an amount which is such part of the unused excess profits credit determined under the preceding provisions of this paragraph as the number of days in such taxable year prior to January 1, 1947, is of the total number of days in such taxable year.' " [Emphasis added]. There was no apportionment provided for such a credit in a tax year beginning in 1945 and ending in 1946, (like Gallo's or Valley's herein).

Sec. 131 of the Revenue Act of 1945 provided,

"§ 131. Fiscal Year Taxpayers

"(a) Income taxes. * * *

"(b) Excess profits tax.

"(1) In general. Section 710(a) (imposing the excess profits tax) is amended by inserting at the end thereof the following:

" '(7) Taxable years beginning in 1945 and ending in 1946. In the case of a taxable year beginning in 1945 and ending in 1946, the tax shall be an amount equal to that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1945, were applicable to such taxable year, which the number of days in such taxable year prior to January 1, 1946, bears to the total number of days in such taxable year.' "

Thus, Sec. 131 of the Revenue Act of 1945, provides how the *excess profits tax* for a year beginning in 1945 and ending in 1946, should be apportioned. [Gallo's year began May 1, 1945, and ended April 30, 1946.] Sec. 122 of the 1945 Act provides for an *unused excess profits credit* for taxable years beginning before December 31, 1946. [Gallo's year and Valley's year in question each began before December 31, 1946.]

Gallo was not prohibited by the repeal of the Excess Profits Tax, from applying Valley's unused profits credit from its last taxable year, to Gallo's taxable year beginning May 1, 1945 and ending April 30, 1946.

### 7.

### The Taxable Years of Gallo and Valley

■ Respondent argues that Valley could not have carried over its unused excess profits credit because after December 19, 1945 it had no succeeding year to which to carry it. If Valley was dissolved on December 19, 1945, respondent would be correct. But respondent is merely rearguing the problem in different words.

After December 19, 1945, Valley's assets and profit producing capital was all in Gallo. Gallo had an excess profits tax for the year beginning May 1, 1945 and ending April 30, 1946 which tax was brought about in part by Valley's profit producing assets. This tax would be computed under Sec. 710 of the Revenue Act of 1939, 26 U.S.C.A. § 710, and under Sections 122 and 131 of the Revenue Act of 1945 c. 453, 59 Stat. 556, as follows:

(1) Ascertain Gallo's entire adjusted excess profits net income for the full taxable year ending April 30, 1946, under Sec. 710(a) Revenue Code of 1939;

(2) Apply Valley's unused excess profits credit in reduction pursuant to Sec. 710(b) and (c) of the Revenue Code of 1939 as amended by Sec. 122 of the Revenue Act of 1945.

(3) Compute Gallo's excess profit tax for the full taxable year ending April 30, 1946 under Sec. 710 of the Revenue Code of 1939.

(4) Under Sec. 131(b) (1) of the Revenue Act of 1945, compute that portion of the tax bearing the ratio that the number of days of the taxable year prior to January 1, 1946 bear to the number of days of the taxable year.

Thus, there were 245 days in Gallo's taxable year prior to January 1, 1946. Gallo would owe 245/365 of the tax first computed.

Since Gallo was paying tax on income produced in part by Valley's assets, we see nothing unfair or shocking about the result we reach. Gallo's adjusted excess profits tax income was in excess of $589,-000.00. On the assumption that this income was earned evenly throughout the year, 132/365 of this or $213,000.00 was earned with Gallo's and Valley's assets after December 19, 1945.[11] The Valley credit, Gallo seeks to use is $60,664.83.

Finally, respondent would distinguish the Stanton case in that there the two corporations were each on a calendar basis and the carry-overs from 1940 and 1941 were used in 1942; while here Valley's last taxable year was from January 1, 1945 to December 18, 1945, and Gallo's year was from May 1, 1945 to April 30, 1946.

Congress has not said that Sec. 710 only applies where both corporations are on a *calendar* year. Respondent's view would unequally apply the law and give benefits to a taxpayer, where by chance each corporation had a calendar year and deny benefits if taxpayer's fiscal year overlapped one day on the ending taxable year of the merged corporation.

It seems clear, that since Valley is now an integral part of Gallo, that Gallo's year ending April 30, 1946 is the next succeeding year to Valley's old year ending December 18, 1945.

As to problems of this sort arising in the future, Congress has provided in Sec. 381(c) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 381(c) (1) "The taxable year of the acquiring corporation to which the net operating loss carry-overs of the distributor or transferor corporation are first carried shall be the first taxable year ending after the date of a distribution or transfer."

We conclude that Gallo is entitled to the carry-over of the unused excess profits tax credit of its now component part, Valley, against Gallo's excess profits tax of its taxable year ending April 30, 1946; and that the Tax Court was in error in not so holding.

The judgment of the Tax Court is reversed and the case remanded for further proceedings, not inconsistent with this opinion.

11. We would assume that a larger daily amount of income was earned in the period from December 19, 1945 to April 30, 1946, during which period Gallo was using both its own and Valley's profit producing assets.