JOHN W. PACEY AND SANDRA K. PACEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pacey v. Commissioner
Docket No. 43984-85.
United States Tax Court
T.C. Memo 1988-68; 1988 Tax Ct. Memo LEXIS 94; 55 T.C.M. (CCH) 165; T.C.M. (RIA) 88068; February 23, 1988. Dwayne I. Morrison, for the petitioners. Clinton M. Fried, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 19,578.56 and $ 7,305 in petitioners' Federal income taxes for 1981 and 1982, respectively. [1] The issue for decision is whether petitioners are entitled to deductions and investment tax credit in relation to their *95 yacht charter activity. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts is incorporated in our findings by this reference. Petitioners were residents of Dahinda, Illinois, at the time they filed their petition. At all material times, petitioner John W. Pacey (Dr. Pacey) was a dentist. Sandra K. Pacey (Mrs. Pacey) was employed as a secretary. They filed joint Federal income tax returns for 1981 through 1983, reporting combined earnings from employment ranging from approximately $ 72,500 to approximately $ 103,800. Both petitioners have extensive background in boating and sailing and can perform most boat and engine repairs and maintenance. From 1979 through the time of trial, they owned a 23-foot sailboat that they used for their personal pleasure. During the 1970's, petitioners became interested in the concept of chartering sailboats. *96 Dr. Pacey enjoyed sailing and contrasted it to the stress that he experienced in his profession. Petitioners hoped that they could at some time engage in the sailboat chartering business, acting as captain and crew. Prior to the years in issue, petitioners investigated chartering operations and boats in the Virgin Islands; Florida; Green Bay, Wisconsin; and Bayfield, Wisconsin. They talked to chartering company representatives as well as to boat owners and chartering captains. They considered the size and features of various boats to be used in a chartering operation. They specifically investigated the Bayfield, Wisconsin, area as to the number of tourists and as to the conditions of the water in which their boat would be operated. Although the charter sailing season is greater in warm water ports, petitioners chose the Bayfield, Wisconsin, area, on Lake Superior, as a locale for their activity because it was closer to their home and the expenses relating to maintenance of the boat would be less. On October 26, 1981, petitioners purchased a 37-foot, 7-inch C&C LF 38 sailboat, named the Love Song, from Sailboats, Inc., of Excelsior, Minnesota, for $ 103, 382. Sailboats, *97 Inc., is the largest charter company in the United States, with a total of seven locations. In addition to selling boats, Sailboats, Inc., operates a sailboat chartering service. Upon purchasing their sailboat from Sailboats, Inc., petitioners immediately enrolled the boat in Sailboats, Inc.'s, charter fleet at Superior, Wisconsin, on Lake Superior, some 600 miles from their residence. Sailboats, Inc., operated charters from May 15 through the first weekend of each October during 1981 through 1983. The Love Song, therefore, was not placed in service during 1981. In 1982, petitioners moved the Love Song to the Apostle Islands Marina in Bayfield, Wisconsin. Petitioners' contract with Sailboats, Inc., contemplated the charter of petitioners' sailboat to vacationers at Bayfield, Wisconsin, for which Sailboats, Inc., was to receive 40 percent of the gross rents and petitioners were to receive 60 percent of the gross rents. During 1982, the Love Song was rented for a total of 9 days, and petitioners used the sailboat for at least 6 days. During 1983, the Love Song was rented for 41 days and petitioners did not use the boat for personal purposes. Petitioners' *98 agreement with Sailboats, Inc., permitted them to obtain their own charters. They personally obtained five charters from the time of acquiring the Love Song through the time of trial. Prior to the time that they purchased the Love Song, petitioners were given projections of income and expenses by Sailboats, Inc. Those projections represented the following: "Charter Ready" Price
$  99,000 Down Payment
24,750 Investment Tax Credit
9,900 "Bonus Depr.", Joint
4,000 DDB Depr. (5-Years) (1/3 yr)
12,540 1981 Depreciation (1/3 yr)
16,540 1982 Depreciation
32,984 1983 Depreciation
15,790 Mortgage Payments
15-year -- 17.5%
Per Month
1,169 1981 Total Pmts. (4)
4,676 1982 Total Pmts. (4)
14,028 1983 Total Pmts. (4)
14,028 Interest Portion of Pmts.
1981 (4 months)
4,324 1982
12,840 1983
12,614 Annual Costs (est. +7%/yr)
Dockage &
Winter Storage
1,800 Maintenance
800 Insurance
1,485 Est. Annual Costs
4,085 Net Revenue (est. +7%/yr)
to Owner -- 30 days
1981
5,000 1982
5,350 1983
5,720 Net Profit (Loss)
1981
(19,949)
1982
(44,559)
1983
(30,995)
Petitioners *99 were also advised by Sailboats, Inc., that Sailboats, Inc., expected to make profits from selling sailboats and not from chartering sailboats. Petitioners' history of income and loss with respect to the Love Song was reported on their Federal Income taxes for 1981 through 1985 as follows: Depreciation
Year
Rents
(Business Use)
Total Loss
1981
--
$ 15,507
$ (20,242)
1982
$ 1,458
19,551
(18,093)
1983
5,411
16,964
(25,995)
1984
2,670
15,721
(27,712)
1985
5,383
15,721
(24,638)
During 1981, 1982, and 1983, the following prices were in effect for the prime sailing season rates for chartering a C&C LF 38 sailboat, prior to discounts and commissions: Days
Amount
3
$ 1,080
4
1,260
5
1,440
6
1,620
7
1,800
A 20-percent discount was provided to all rental days except July and August, and a 10-percent discount on repeat rentals. Petitioners maintained complete, accurate, and adequate records of their sailboat chartering activity during the years in issue. Before purchasing the Love Song and during the years in issue, they did not take into account depreciation in analyzing *100 the results of their sailboat chartering activity because they believed that the sailboat would increase and not decrease in value. At the end of the 1982 chartering season, petitioners expressed their dissatisfaction with the charter results of Sailboats, Inc., and investigated other chartering companies. They requested and received an explanation from Sailboats, Inc., of what actions it intended to take to make 1983 more profitable. Petitioners, with the assistance of Sailboats, Inc., obtained a refinancing of their purchase money loan on the sailboat, which lowered their interest rate from 18 percent to 14 percent, and obtained a 25-percent reduction in their insurance costs. Petitioners performed maintenance on the Love Song, including winterizing, dewinterizing, finding and fixing leaks, and sanding and varnishing, as well as personally moving their boat from winter storage in Superior to the chartering location in Bayfield each year, thus avoiding expenses of having other persons perform these tasks. In addition to other adjustments now resolved by agreement, respondent determined that the rental expenses relating to the sailboat were not allowable under section 183 *101 [2] because the activity was not entered into for profit. In an amendment to his answer, respondent alleged that, if the activity was entered into for profit, depreciation is not allowable because "petitioners have failed to establish that their sailboat is a depreciable asset, or that they correctly estimated the correct salvage value of their sailboat." OPINION Respondent moved to amend his answer when, prior to trial, he was advised of petitioners' contention that they anticipated a profit because their sailboat, the Love Song, would appreciate in value. Respondent has the burden of proof with respect to new matters raised in the answer. Rule 142(a), Tax Court Rules of Practice and Procedure.[3] In order to prevail on this alternative theory, respondent would have to establish the correct salvage value to be used or that the sailboat was not eligible for depreciation. [4]
*102 Petitioners, however, have the burden of proving that the determination in the statutory notice is incorrect. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Engdahl v. Commissioner,72 T.C. 659 (1979); Rule 142(a), Tax Court Rules of Practice and Procedure. In this case, petitioners must prove that their sailboat charter activity was entered into with an actual and honest profit objective and was not an activity not engaged in for profit as defined in section 183(c). If the activity is not engaged in for profit, deductions arising therefrom are allowed only to the extent of gross income earned from the activity. Section 183(b)(2). A determination of whether the requisite profit objective exists is to be made on the basis of all the surrounding facts and circumstances of the case. Section 1.183-2(b), Income Tax Regs. Greater weight is to be given to the objective facts than to the taxpayer's mere statement of his intent. Section 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., lists some of the factors to be considered in determining whether an activity is engaged in for profit. The factors listed in the regulation *103 are as follows: (1) Manner in which the taxpayer carried on the activity. (2) The expertise of the taxpayer or his advisors. (3) The time and effort expended by the taxpayer in carrying on the activity. (4) Expectation that assets used in activity may appreciate in value. (5) The success of the taxpayer in carrying on other similar or dissimilar activities. (6) The taxpayer's history of income or losses with respect to the activity. (7) The amount of occasional profits, if any, which are earned. (8) The financial status of the taxpayer. (9) Elements of personal pleasure or recreation. These factors are not intended to be exclusive, and no one factor or majority of the factors need be considered determinative. Golanty v. Commissioner,72 T.C. 411, 426-427 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). This is a close case, in which some of the evidence favors petitioners and some favors respondent. Petitioners carried on the activity in a businesslike manner, maintaining adequate records and reasonably delegating management of the sailboat to a third party having the necessary expertise and facilities for operating *104 the charter activity. See Siegel v. Commissioner,78 T.C. 659, 701-702 (1982); section 1.183-2(b)(2), Income Tax Regs. Petitioners also conducted a reasonable investigation prior to purchasing the sailboat and had the necessary personal expertise to engage in a sailboat charter business. The time and effort expended by them in carrying on the activity was reasonable under the circumstances. Petitioners also had a reasonable expectation that the sailboat "may appreciate in value." Although respondent's counsel attempted to impeach Dr. Pacey in this regard during trial, in his brief respondent, for strategic reasons relating to his alternative argument, does not dispute petitioners' expectation that the property may appreciate. Petitioners, however, testified that the Love Song was purchased to be operated as a charter. They did not present any evidence that they anticipated sale of the Love Song at a profit, and the evidence is insufficient to draw any conclusion as to the amount of appreciation and, particularly, that it would cover operating losses actually incurred. See Jasionowski v. Commissioner,66 T.C. 312, 322 (1976); Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), *105 affd. 379 F.2d 252 (2d Cir. 1967). [5]
Respondent refers to the "wealth" of petitioners and cites a variety of tax shelter cases in which courts concluded that an activity was strictly tax motivated. In this case, the financial status of the taxpayer and the elements of personal pleasure or recreation are neutral. petitioners' other income is not so substantial that we can infer from it that the activity is or is not engaged in for profit. As respondent acknowledges, petitioners' enjoyment of the activity does not preclude deductibility. Jackson v. Commissioner,59 T.C. 312, 317 (1972). In this case, the most persuasive evidence if the taxpayers' history of income or losses with respect to the activity. There were not any "occasional profits" received or to be anticipated. The materials received from Sailboats, Inc., prior to the purchase projected losses, even disregarding depreciation, and did not set forth any reason to *106 believe that rental income would offset the losses. There is no evidence, other than actual rentals, of the likely level of paying charters. Recurring losses were probable in view of the short season on Lake Superior and were not due to unpredictable events. [6] The projected cash flow to petitioners was totally attributable to anticipated tax benefits.
We recognize that petitioners' expectations of profits need not be reasonable. Respondent argues that profit potential would have been enhanced by alternative courses of action that petitioners might have taken, such as purchasing a smaller boat or choosing a warm water port. We disregard that assumption. The determination of whether petitioners had the requisite intent must be based on objective facts in the record and not on either party's speculation as to what might have been. See Dreicer v. Commissioner,78 T.C. 642, 644 (1982), affd. in an unpublished opinion 702 F.2d 1205 (D.C. Cir. 1983); Jasionowski v. Commissioner,66 T.C. at 319-321. On consideration *107 of the entire record, we conclude that petitioners have not satisfied their burden of proving that their sailboat charter activity was engaged in for profit during the years in issue. Decision will be entered under Rule 155.
Footnotes
1. Petitioners' Federal income tax liability for 1983, involving the same issue, is the subject of docket No. 13396-87. Although the later docketed case was not at issue in time to be consolidated with the within case for trial, the parties have agreed to be bound for 1983 by the findings in this case. ↩
2. All section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩
3. See Dickson v. Commissioner,T.C. Memo. 1983-723↩, which is apparently the predicate for respondent's position in this case. It is anomalous, therefore, to allege in an amendment to an answer the disallowance of an item because "petitioners have failed to establish [their entitlement to a deduction]." 4. Petitioner distinguishes Dickson v. Commissioner, supra, on the ground that the depreciation in this case was taken under the accelerated cost recovery system, which does not require determination of salvage value, as contrasted to the straight line method used by the taxpayer in Dickson.↩
5. In this regard, the evidence is equivocal, rather than unequivocal, which was the key to the Court's conclusion in Dickson v. Commissioner, supra,↩ that respondent had satisfied his burden of proof. 6. Compare Slawek v. Commissioner,T.C. Memo. 1987-438, and Dickson v. Commissioner, supra.↩