JAMES W. COLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cole v. Commissioner
Docket No. 7696-89.
United States Tax Court
T.C. Memo 1992-51; 1992 Tax Ct. Memo LEXIS 56; 63 T.C.M. (CCH) 1921; T.C.M. (RIA) 92051; January 28, 1992, Filed *56 Decision will be entered under Rule 155. R determined deficiencies in and additions to P's Federal income tax liability for the taxable years 1985 and 1986 after disallowing losses claimed by P with respect to the operation of a pecan farm. R determined that P did not engage in the activity for profit. Held, P operated his pecan farm as an activity engaged in for profit for purposes of sec. 183(a), I.R.C.Held, further, P is entitled to that portion of the investment credit which he claimed for the taxable year 1985 with respect to a truck, to the extent the truck was used in connection with his farm activity. Earl G. Covington for petitioner. Carol Bingham McClure, for respondent. NIMS, Chief Judge. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Addition to tax
Year
Deficiency
Section 6661
1985
$  8,388
$ 2,097
1986
11,441
2,860
(Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.) After concessions, the issues for decision are: *57 (1) Whether petitioner's operation of a pecan farm is an activity engaged in for profit under section 183(a) for the taxable years 1985 and 1986; (2) whether petitioner is entitled to a claimed investment credit of $ 597 with respect to a truck which he used in part on his pecan farm during the taxable year 1985; and (3) whether petitioner is liable for the addition to tax under section 6661 for the taxable years 1985 and 1986. FINDINGS OF FACT A portion of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. James W. Cole (petitioner) resided in Houston, Texas, at the time of the filing of the petition herein. Petitioner is a dentist by trade. In the early 1970s, petitioner's father transferred an 80-acre farm to petitioner as a gift. The farm is located in Cisco, Texas, a small town in the north-central part of the State. Petitioner's father had owned the farm since petitioner was a child. In the 1940s, two of petitioner's uncles planted 31 acres of the farm with pecan trees. Until petitioner's father retired to Cisco in 1964, these trees had not been given appropriate care. Upon his retirement, petitioner's *58 father began to care for the trees. At the time the farm was transferred to petitioner, 355 pecan trees remained on 31 acres of the farm. The farm is located on an upland area of land, as opposed to a river or creek bottom area. Pecan trees generally produce a higher yield of nuts in river or creek bottom areas. In 1974, petitioner began to consider expansion of the pecan operation on the farm. At that time, petitioner enrolled in a short course on pecan management at the University of Texas A & M. The short course is offered in January of each year and lasts one week. In 1977 or 1978, petitioner made the decision to expand and improve the pecan operation. Shortly thereafter, petitioner acquired an additional 80-acre tract of land adjacent to the farm. (The original 80-acre tract will be referred to herein as the old orchard, and the later acquired tract will be referred to as the new orchard.) In addition to the 355 pecan trees (mature trees) standing on the old orchard, petitioner gradually planted an additional 334 pecan trees on 22 acres of the old orchard. At the time of trial, approximately one-third of the 334 trees were 10 years old, one-third were 11 years old, *59 and one-third were 16 years old. Eventually, petitioner planted 779 trees on 28 acres of the new orchard. At the time of trial, 99 of the trees were four years old, 128 were six years old, and 552 were 10 years old. Petitioner has a total of 1,468 pecan trees at various stages of growth on approximately 81 acres of land. Petitioner installed an irrigation system to provide water for the new trees on both the old orchard and the new orchard. No irrigation is provided for the 355 mature trees on the old orchard. There is sufficient room and irrigation for approximately 220 additional trees on the old orchard. Improvements on petitioner's farm include an uninhabitable house used for storage, a garage area used to store and repair equipment, a one-room efficiency apartment attached to the garage area (used by petitioner), a trailer home belonging to a caretaker living on the property, and a small building used to house a filtering system for the irrigation system. The irrigation system consists of two ponds, a pump floating on the surface of the pond, a filtering system to clean the water, and a series of pipes to deliver water to the individual trees. The capacity of the irrigation *60 system is limited to the extent that the ponds are replenished by runoff from rain. Generally, water is delivered to the smaller trees through a "drip emitter" or trickle system that concentrates water on the trunk of the tree. As petitioner's trees have grown larger, however, petitioner has converted to sprinklers which deliver water to the feeder roots in a circular pattern under the tree. In addition to the irrigation system, petitioner has acquired various pieces of equipment for use in his pecan operation. The items include a Ford tractor (petitioner also has a one-half interest in an Allis-Chalmers tractor), two disk harrows used for cultivation, a large mower, a mist blower-sprayer, a herbicide sprayer, and a trailer used for hauling. Petitioner is a member of the Texas Pecan Growers Association. Petitioner attends the organization's annual meetings and as a consequence of his membership receives various periodicals including Pecan Press, Pecan South, The Nut Grower, and The Pecan Grower. Petitioner also subscribes to the Texas Horticulturist at a cost of approximately $ 10 per year. In the course of expanding the pecan operation, petitioner consulted various experts *61 in the field of pecan horticulture. In the early stages, petitioner consulted experts at the University of Texas A & M concerning the proper varieties to plant as well as planting techniques. Later, experts visited petitioner's farm to instruct petitioner on weed control and proper techniques for pruning, watering, and fertilizing of the trees. Petitioner also hired irrigation specialists to assist him in designing and installing his irrigation system. Representatives of the Eastland County Soil Conservation District instructed petitioner with respect to measures to prevent soil erosion on his farm. Petitioner did not consult with tax or investment advisers prior to his decision to expand the pecan operation. Petitioner did not prepare a formal projection of income and expense prior to expanding the pecan operation. Petitioner is physically active in the pecan operation. In an effort to control costs, petitioner worked along with hired labor to install the irrigation system. In addition, petitioner provides a significant portion of the labor needed to care for the trees themselves, including on an annual basis pruning, start-up of the irrigation system, numerous fertilizations *62 and sprayings, cultivation, and weed control. Petitioner's farm does not provide an opportunity for leisure or sports activities nor does petitioner engage in such activities while he is there. Wayne Carlile (Carlile) lived on petitioner's farm as a caretaker from 1980 through 1988 and assisted petitioner in the pecan operation. During the period that he lived on the farm, Carlile also had a full-time job elsewhere. Carlile provided some of his own equipment for use in maintaining the farm. Carlile was responsible for conducting the annual harvest. In this regard, he had the authority both to hire workers to gather the pecans and to sell the pecans. After selling the pecans, Carlile reimbursed himself from the proceeds for the amounts expended to hire the workers. The remaining proceeds were split with petitioner. Petitioner's agreement with Carlile was not reduced to writing. Carlile left the farm in 1988. At that time, his responsibilities on the farm were assumed by his brother, Warren Carlile. Petitioner commutes to the farm by automobile. It takes petitioner six hours to drive the 325 miles between his home in Houston and the farm in Cisco. In September, 1985, petitioner *63 purchased a truck for $ 9,655. During 1985 he drove the truck: (1) Approximately 50 miles per month commuting from his residence to his dental office in Houston and on personal errands; (2) approximately 650 miles per month commuting to the farm; and (3) approximately 100 miles per month on errands related to the pecan operation during his visits to the farm. It does not appear that petitioner neglected his dental practice in Houston in favor of the farm. Nonetheless, the amount of time petitioner spent at the farm from 1984 through 1989 increased as reflected below: Year
Trips
Days
1984
10
40
1985
13
51
1986
13
55
1987
15
61
1988
18
68
1989
23
78
Petitioner's efforts to bring his orchard into full production have been hindered by various misfortunes. In the early 1980s, a specialist detected nematodes (microscopic worms) in the soil around petitioner's trees. Nematodes have a detrimental effect on pecan trees in that they can cause a tree to defoliate prematurely in the fall which in turn reduces the tree's yield the following year. To treat the problem, petitioner purchased additional chemicals at a cost of approximately $ 45 per acre. In 1982, *64 the mature trees in petitioner's orchard were suffering from lack of fertilization and water which caused the tops of the tress to die out. It takes three to four years of intensive management to bring mature trees back into production after several years of such neglect. Petitioner rehabilitated the mature trees through a management program including weed control, nematode control, and fertilization. Several years of drought and late spring freezes over the past 10 to 12 years have also affected productivity. Drought during 1989 caused petitioner to lose a significant portion of his production for that year. Petitioner applied for and received a drought relief award for 1989 from the local office of the Agricultural Stabilization and Conservation Service, an agency of the United States Department of Agriculture. As late as 1990, the younger trees in petitioner's orchard were suffering from "sun scald" -- a sunburn of the trees' bark due to exposure to the sun on cold clear days in late fall and early winter. The condition can be avoided by painting the trunks of the trees with a white latex paint or covering the trunks with a tree wrap. It takes approximately two years for *65 pecan trees to recover from sun scald. The production and harvesting costs for a pecan operation generally will increase from the time new trees are planted until the trees reach maturity at which time costs will stabilize. Pecan trees normally begin to produce after 5 years, with yield gradually increasing until the tree reaches maturity between 10 and 12 years. It takes approximately 12 years to recover the expenses required to establish a pecan orchard. Over the past several years, pecan prices have varied from 65 cents to $ 1.30 per pound. The present production potential for the 355 mature trees on the old orchard is 900 to 1,500 pounds per acre. The production potential for the trees 11 and 16 years of age is approximately 1,150 and 1,600 pounds per acre, respectively. Petitioner did not produce records of production prior to 1989. In 1989, petitioner harvested 11,581 pounds of pecans. Petitioner generally pays expenses incurred in his pecan operation by check. Petitioner retains his cancelled checks and refers to them at the end of the year for purposes of preparing his Federal income tax returns. The value of petitioner's farm in its use as a pecan orchard is higher *66 than if petitioner used the farm for pasture land. Petitioner did not provide the Court with an appraisal of the value of the farm. In addition to reporting substantial income from his dental practice (not at issue herein), petitioner reported gross revenues and net losses from his pecan operation for the taxable years 1980 through 1989 as follows: Year
Gross Revenues
Net Losses
1980
$ 1,684
$ 20,974
1981
361
20,409
1982
2,194
23,714
1983
2,248
24,278
1984
3,772
20,306
1985
2,904
15,080
1986
2,276
25,189
1987
1,128
19,106
1988
2,711
15,651
1989
4,922
9,210
At the time petitioner decided to expand the pecan operation, he did not have an expectation of immediate profit but nonetheless viewed the endeavor as a long-term investment. Petitioner believes that as more trees reach production age the pecan operation will become profitable. Petitioner intends to retire to the farm. OPINION Respondent determined that petitioner's pecan operation is an activity not engaged in for profit under section 183(a) for the taxable years 1985 and 1986. In short, respondent contends that the orchard merely has sentimental value to petitioner and that petitioner *67 engages in the activity for pleasure. Respondent further contends that because petitioner did not engage in the pecan operation for income or profit, the operation does not constitute a trade or business, and therefore petitioner is not entitled to an investment credit claimed with respect to the truck petitioner purchased in 1985. Finally, respondent determined that petitioner is liable for the addition to tax under section 6661 for the taxable years 1985 and 1986. Respondent contends that petitioner's reporting position with respect to his pecan operation is not supported by substantial authority and that petitioner did not adequately disclose the relevant facts concerning his pecan operation on his returns for the years at issue. As a general rule, in order to deduct losses incurred in an activity a taxpayer must show that the activity was engaged in with an actual and honest profit objective. Sec. 183(a); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.Section 183(c) defines an "activity not engaged in for profit" as any activity other than *68 one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. Sections 162 and 212 provide deductions for ordinary and necessary expenses paid or incurred in the carrying on of a trade or business or for the production of income. Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he engaged in the activity with an actual and honest objective of making a profit. Rule 142(a); New Colonial Co. v. Commissioner, 292 U.S. 435, 440 (1934); Beck v. Commissioner, 85 T.C. 557, 569 (1985). The determination of whether the taxpayer engaged in an activity with the necessary profit objective is based on all the surrounding facts and circumstances. Abramson v. Commissioner, 86 T.C. 360, 370 (1986); Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981); sec. 1.183-2(b), Income Tax Regs. Although the expectation of profit need not be reasonable, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued it, with the actual and honest objective of making a profit. *69 Dreicer v. Commissioner, supra at 645. Petitioner views his pecan operation as a long-term investment. However, in determining whether petitioner engaged in the activity with the requisite profit objective, we give greater weight to objective factors than to the taxpayer's bare statement of intent. Beck v. Commissioner, supra at 570. Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine factors bearing on whether an activity is engaged in for profit. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used by the taxpayer may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor nor the existence *70 of even a majority of factors is controlling. 1. Manner in which the taxpayer carries on the activity. An important consideration is whether the taxpayer engaged in the activity in a businesslike manner. Factors relevant to this inquiry include the completeness of business records and changes in methods of operation to improve profitability. Petitioner did not maintain a formal set of books for the pecan operation. In addition, petitioner did not maintain records of production prior to 1989, nor did he reduce his agreement with Wayne Carlile to writing. Nonetheless, petitioner retained cancelled checks reflecting expenses of the operation and reported his share of the proceeds from pecan sales on his Federal income tax returns throughout the period in question. Petitioner did not consult with tax or investment advisers prior to his decision to expand the pecan operation. In addition, petitioner did not prepare a formal projection of income and expense prior to expanding the pecan operation. On the other hand, petitioner has worked diligently to educate himself on pecan horticulture and has acquired the equipment and taken the steps necessary to properly care for the *71 trees. Further, petitioner has worked the farm himself in an effort to keep his expenses to a minimum. 2. The expertise of petitioner or his advisers. Petitioner completed a short course on pecan horticulture before expanding his operation and has frequently obtained the advice of experts in an effort to improve his operation. Further, petitioner receives various periodicals relating to pecan horticulture. 3. The time and effort expended by petitioner in carrying on the activity. Petitioner has devoted extensive time and effort to his pecan operation. Petitioner provides a significant portion of the labor needed to care for the trees, including on an annual basis pruning, start-up of the irrigation system, numerous fertilizations and sprayings, cultivation, and weed control. Moreover, petitioner's efforts have increased over time as his trees have matured. Petitioner's round-trip commute to the farm is approximately six hours. 4. Expectation that assets used in activity may appreciate in value. While it is evident that the farm is worth more as a consequence of petitioner's efforts in expanding the pecan operation, petitioner did not have the property appraised. *72 There is no credible evidence in the record reflecting an appreciated value of the property. Nonetheless, we do not doubt that petitioner expected that the farm would appreciate in value. Under the circumstances, such expectation was reasonable. 5. The success of petitioner in carrying on other similar or dissimilar activities. Petitioner never carried on any farming activities prior to his pecan operation. As reflected on his Federal income tax returns, however, petitioner has reported substantial income for a number of years from his dental practice. 6. Petitioner's history of income or losses with respect to the activity. Petitioner's pecan operation has never attained profitability, and his reported receipts have been somewhat nominal in comparison to his expenses. 7. The amount of occasional profits, if any, which are earned. As stated, petitioner's pecan operation has never been profitable. 8. Financial status of petitioner. Petitioner earned substantial income from his dental practice during the years in issue and therefore was in a position to enjoy tax benefits as a consequence of the deductions and credits arising from his pecan operation. *73 9. Elements of personal pleasure or recreation. Because the farm has been in his family for many years, there can be little doubt that petitioner derives some element of personal pleasure from his pecan operation. On the other hand, the activity requires extensive manual labor. Petitioner does not engage in recreation or sports activities while on the farm. Based on all the surrounding facts and circumstances, we conclude that during the years in issue petitioner operated his pecan farm with an actual and honest objective of making a profit. In support of our conclusion, we begin with the proposition which emerges from the entire record that pecan farming is by its very nature an uncertain venture. In this light, petitioner's activities are best viewed as a long-term investment, and thus the lack of current profits is not compelling. Moreover, petitioner has approached the endeavor in a professional manner and has sought expert advice when otherwise unsure how to proceed. Petitioner has committed much of his own time and physical effort to the operation. Overall, petitioner appears to have taken the steps necessary to ensure future success for the operation. On the *74 other hand, there is little evidence suggesting that petitioner lacks the requisite profit objective. Accordingly, we hold for petitioner. The issue remaining to be decided is whether petitioner is entitled to a claimed investment credit in the amount of $ 597 with respect to the truck he purchased during 1985. Section 38 allows a credit for investment in certain depreciable property. More specifically, the credit is allowable on "section 38 property" -- generally tangible personal property which is subject to depreciation. Sec. 48(a)(1). Depreciation is allowable on property used in a trade or business or held for the production of income. Sec. 167(a). However, if property is used for both business and personal purposes, only the depreciable portion qualifies for the investment credit under section 48(a)(1). Sec. 1.48-1(b)(2), Income Tax Regs. Since we have concluded that petitioner engaged in his pecan operation with an objective of earning a profit as defined in section 183(c), it follows that the truck he purchased during 1985 is properly characterized as "section 38 property" if petitioner actually used the truck in the pecan operation. Unfortunately, petitioner did *75 not maintain records distinguishing between his personal and business use of the truck during 1985. Our findings of fact as to petitioner's use of the truck are based upon his testimony at trial. Petitioner's testimony did not appear to exaggerate his business use of the truck and was straightforward and convincing, and accordingly we accept his testimony on the point. Based on that testimony, we conclude that petitioner is entitled to a part of the full amount of investment credit claimed. The investment credit is not available to the extent that petitioner used the truck to commute both to his dental practice and to the pecan farm. Use of the vehicle for commuting purposes is properly viewed as personal use, and therefore depreciation is not permitted. Heuer v. Commissioner, 32 T.C. 947, 951 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). On the other hand, petitioner is entitled to the investment credit to the extent he used the truck to complete errands in furtherance of the pecan operation during his visits to the farm. However, as previously stated, petitioner failed to maintain adequate records by which the amount of any investment *76 credit to which he is entitled can be accurately determined. As a result of this inexactitude, which is of petitioner's own making, we must approximate the amount of the credit allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We conclude that petitioner's use of the truck in the pecan operation during 1985 was limited to 15 percent of its total use, so that petitioner is entitled to an investment credit of $ 89.55, and we so hold. By virtue of our holding that petitioner engaged in the pecan operation with the objective of earning a profit, respondent's determination that petitioner is liable for the addition to tax under section 6661 is rendered moot. To reflect the foregoing, Decision will be entered under Rule 155.