T.C. Memo. 2014-2

UNITED STATES TAX COURT

WILLIAM L. WEST, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7098-12.                    Filed January 8, 2014.

William L. West, pro se.

Sheila R. Pattison and Daniel N. Price, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge: Respondent determined a deficiency of $6,300 in

petitioner's Federal income tax for 2006. Petitioner claims an overpayment of

$42,000. After concessions, the issue for decision is whether petitioner is entitled

to deduct $120,000 as a theft loss. Unless otherwise indicated, all section

[*2] references are to the Internal Revenue Code in effect for 2006, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Texas at all material times, including at the time he filed his petition. Petitioner became a certified public accountant in 1982. From November 2005 through mid-2006, he was chief executive officer of Cap Rock Energy Corp. (Cap Rock). After his employment with Cap Rock ended in 2006, petitioner established his own consulting business.

Petitioner was married to Jo Ann Morley from about August 1980 to March 31, 2005. They have two children, a son born in 1989 and a daughter born in 1992. Both of petitioner's children were in high school in 2006 but later attended college, and petitioner's son was pursuing advanced degrees at the time of trial of this case in May 2013.

Petitioner married Sybilla Irwin in May 2005. They were divorced on August 8, 2006.

On June 1, 2006, petitioner called Morley and asked her to take him to an alcohol rehabilitation facility in California. Morley accompanied petitioner to the

[*3] facility, where he received treatments during June and July 2006. However, he continued to struggle with alcohol problems after those treatments.

When he first moved to the rehabilitation facility in California, petitioner gave Morley signature authority over his personal and business bank accounts. Morley began assisting petitioner with personal matters, including paying his personal bills, and with his newly commenced consulting business. During a telephone conversation in July 2006 initiated by petitioner, he and Morley discussed setting aside $120,000 of petitioner's money for the benefit of their children. Petitioner expressed to Morley that he intended that the money be used for expenses related to their children's education. During this conversation, petitioner also discussed his upcoming divorce from Irwin. Petitioner suggested to Morley, and later represented to an Internal Revenue Service agent, that he wanted to preclude Irwin's access to the funds.

On or about July 31, 2006, as authorized by petitioner, Morley wrote a check for $120,000 payable to herself from petitioner's account. Morley then consulted her brother-in-law, then with Edward Jones financial services, about setting aside the funds for petitioner's children. On or about October 3, 2006, she transferred the $120,000 to Uniform Transfers to Minors Act (UTMA) accounts for the benefit of their children and to a section 529 account for petitioner's

[*4] daughter. The funds later dispersed from the three accounts were for the education-related expenses of petitioner's children.

Morley continued to work for petitioner through the end of 2007. In late 2007, petitioner was ill. Morley cleaned out petitioner's house in Midland and prepared it for sale. On several occasions from July 2006 through March 2008, petitioner attempted reconciliation with Morley, but she declined. In 2008, the relationship between petitioner and Morley deteriorated.

On or about August 26, 2008, petitioner attempted to take control of the funds transferred to Morley in 2006, using newly prepared revocable trust documents, with himself as trustee, for the benefit of his children. In a letter enclosing the trust documents to Morley's brother-in-law, then with Wachovia Securities, petitioner stated that he did not recall ever appointing Morley as custodian of the childrens' accounts and that "I was in quite a hurry to get these funds out of my personal bank account for some very important personal reasons at the time."

In September 2008, petitioner was having financial difficulties. He attempted to obtain funds from the accounts that Morley had set up. He advised Morley that the $120,000 transferred to her in 2006 should have been put in revocable trusts rather than in the childrens' educational accounts.

[*5] On June 19, 2009, petitioner filed a civil lawsuit against Morley related to the $120,000 transferred to the UTMA and section 529 accounts for their children and other matters. Morley asserted counterclaims in the lawsuit. In early 2010, the parties to the lawsuit entered into a settlement agreement. In the settlement agreement, petitioner and Morley acknowledged that the education accounts were the property of their children. Morley agreed to provide to petitioner biannual financial information related to the UTMA accounts. Petitioner and Morley released all claims against each other in the settlement agreement.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2006 on March 25, 2008. He filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 2006 on January 17, 2009. Petitioner did not claim a theft loss on either of those returns. He first claimed a $120,000 theft loss on a Form 1040X for 2006 that he submitted on June 4, 2009.

OPINION

Petitioner contends that he was the victim of a theft in 2006 when Morley used $120,000 to establish UTMA and section 529 accounts rather than revocable trusts for the benefit of their children. He and Morley disagree in their testimony as to whether he so instructed her when he told her to set aside the funds for the children.

**[*6]** At the time of the transfer of funds, petitioner had been undergoing treatment for alcohol problems and was anticipating a divorce from his second wife. He had given Morley signature authority over his bank accounts and was relying on her for help in managing his financial affairs. He was also ill in 2007. For the first time in 2008, when he was having financial difficulties, petitioner tried to document revocable trusts with himself as trustee. In 2009, he filed suit against Morley. In 2010 the suit was settled with agreement that the funds belonged to the children.

Petitioner argues that he wanted revocable trusts so that the funds could not be used by his children for purposes other than education and so that he would have access to the funds and that he so advised his children. He insists that he told Morley in 2006 to establish revocable trusts. He also claims that he "realized his $120,000 was 'in trouble', i.e. stolen, by the end of 2006." She denies that he said anything about revocability before 2008.

Section 165(a) permits a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(e) provides: "For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." A loss is not "sustained" during a year unless and until there is no reasonable

**[\*7]** prospect of recovery. <u>See</u> secs. 1.165-1(d) (2) (i), (3), 1.165-8(a) (2), Income Tax Regs.

The taxpayer has the burden of proving entitlement to the deduction claimed. Rule 142(a); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934); <u>Rockwell v. Commissioner</u>, 512 F.2d 882, 886 (9th Cir. 1975), <u>aff'g</u> T.C. Memo. 1972-133. The burden shifts to the Commissioner only if the taxpayer has presented credible evidence on the issues of fact affecting the deduction. Sec. 7491(a)(1). In this case, the crucial fact is whether petitioner instructed Morley to establish revocable trusts at the time he told her to set aside $120,000 for their children.

We need not accept petitioner's testimony and may reject it because of the many indicia of unreliability. <u>See</u> <u>Fleischer v. Commissioner</u>, 403 F.2d 403, 406 (2d Cir. 1968), <u>aff'g</u> T.C. Memo. 1967-85; <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). We are not confident that petitioner's recollections of the events of mid-2006 are reliable because of the circumstances under which he sought Morley's help in seeking rehabilitation from alcohol abuse and protection during a divorce from his second wife. He claims to have told Morley that he would "paper it up" at a later date, but he made no attempt to document a revocable trust until he was in financial difficulties in 2008. There are no contemporaneous documents

**[*8]** corroborating petitioner's version. There are no documents expressing his claims of revocability or theft before 2008.

On the other hand, we have no reason to reject the contrary testimony of Morley. Petitioner attacks her credibility on the basis of unrelated claims that he made in the lawsuit he filed in 2009 about events occurring when she cleaned out his residence for sale in 2007. Those claims also were belated and were never established; they were settled. He also attacks respondent's reliance on Morley's credibility, but we agree with respondent that Morley's testimony is more reliable than petitioner's. Petitioner argues that he did not document the revocable trusts when he instructed Morley to transfer funds because he trusted her, and he gave her control over his assets even after their marriage ended. His judgment of her after almost 25 years of marriage is worth considering. We understand that former spouses are not objective witnesses in many instances, but we must reach a decision based on which version is more probable and which party has the burden of proof. In this instance, considering primarily the passage of time between the transaction and petitioner's expressions of disagreement with Morley's handling of the transaction and the absence of contemporaneous corroboration of petitioner's intentions, we conclude that the burden of proof has not shifted and that petitioner has not proven that a theft occurred.

**[\*9]** We are not persuaded that Morley's establishment of the UTMA accounts constituted a theft, because we believe that her conduct was consistent with petitioner's expressed intentions. Tex. Penal Code Ann. sec. 31.03(a) and (b) (West 2011 & Supp. 2012) provides that a person commits the offense of theft if that person "unlawfully appropriates property with intent to deprive the owner of property" but that "[a]ppropriation of property is unlawful if: (1) it is without the owner's effective consent". Because she acted with petitioner's effective consent, there was no theft under Texas law or any other recognized definition of theft.

In any event, we do not believe that petitioner discovered a theft loss in 2006. Petitioner's retrospective attempt in 2009 to claim for tax purposes a theft loss allegedly occurring in 2006 suggests an afterthought. His claimed suspicions in 2006 are not sufficient to establish discovery of a theft loss in 2006. Moreover, if a loss occurred, he has not shown that there was not a reasonable prospect of recovery as late as the settlement of the lawsuit in 2010. See generally Marine v. Commissioner, 92 T.C. 958, 975-980 (1989), aff'd without published opinion, 921 F.2d 280 (9th Cir. 1991); Paine v. Commissioner, 63 T.C. 736, 743 (1975), aff'd without published opinion, 523 F.2d 1053 (5th Cir. 1975). Petitioner is not entitled to deduct $120,000 as a theft loss for 2006.

**[\*10]**  We have considered the other arguments of the parties.  They are immaterial to our conclusions or without merit.  To reflect the settlement of other issues and the above discussion,

<u>Decision will be entered</u>

<u>under Rule 155</u>.